Michael J. GEISELMAN, et al.,
Plaintiffs, Appellants,

v.

UNITED STATES of America, et
al., Defendants, Appellees.

Michael J. GEISELMAN,
Plaintiff, Appellant

v.

UNITED STATES of America,
Defendant, Appellee.

Nos. 91–1501, 91–1738.

United States Court of Appeals,
First Circuit.

Submitted Dec. 16, 1991.

Decided March 31, 1992.

2

Michael J. Geiselman and Valerie Washburn Geiselman, on brief, pro se.

Wayne A. Budd, U.S. Atty., Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, Gayle P. Miller and Sally J. Schornstheimer, Attys., Tax Div., Dept. of Justice, on brief, for appellees.

Before SELYA, Circuit Judge, CAMPBELL, Senior Circuit Judge, and CYR, Circuit Judge.

PER CURIAM.

The appellants in these consolidated appeals, Valerie Washburn Geiselman (appellant in No. 91–1501) and Michael Geiselman (appellant in both No. 91–1501 and No. 91–1738), appeal from the district court's grant of summary judgment to the United States of America and to Gerard Esposito, the District Director of the Internal Revenue Service (collectively, the "federal defendants"). Although the paths of these appeals wind through a procedural thicket and a small but dense forest of papers, they lead eventually to a clear patch of substantive legal ground. For the reasons stated below, we dismiss the appeal in No.

91–1501 for lack of jurisdiction and affirm the judgment at issue in No. 91–1738.

### The Tax Deficiencies

The root of the Geiselmans' claims is the government's seizure and sale of their home to satisfy unpaid tax debts. The sale occurred on March 22, 1989. The debts arose when Michael Geiselman failed to file federal income tax returns for 1978 through 1982, and Valerie Geiselman failed to file returns for 1979 and 1980. In 1986 the IRS mailed separate "notices of deficiency" to Michael and Valerie. See 26 U.S.C. § 6212(a). Michael's notice of deficiency told him that he owed more than $30,000 in unpaid taxes, penalties and interest; Valerie's notice informed her that she owed the government about $2,000.

The mailing of the notices of deficiency set the clock running on the ninety-day period in which Michael and Valerie could petition the Tax Court for redetermination of the deficiencies. 26 U.S.C. § 6213(a). During that period, the IRS is barred from taking any action to collect the debt, id., and in this case the Service duly refrained. Neither Michael nor Valerie filed a petition for redetermination in the Tax Court. According to the documents submitted to the district court, the IRS took the next step in the collection process on October 6, 1986, when it formally (and separately) assessed the amounts due from each spouse. See 26 U.S.C. § 6201 (authorizing Secretary of Treasury to assess taxes), § 6203 ("assessment shall be made by recording the liability of the taxpayer in the office of the Secretary"). On the same day, the IRS sent "First Notices" of the respective assessments to Michael and Valerie. 26 U.S.C. § 6303(a) (Secretary shall, within 60 days of assessment, "give notice to each person liable for the unpaid tax, stating the amount and demanding payment thereof"). Additional notices followed as the IRS periodically assessed interest due on the underlying tax liabilities.

Once demand had been made, liens arose in favor of the United States against all of Michael and Valerie's property and rights to property. See 26 U.S.C. § 6321.

In 1989, as neither Michael nor Valerie had paid the taxes due, the government seized the Geiselmans' house and sold it to satisfy their tax obligations. See 26 U.S.C. § 6331 (authorizing Secretary to levy on property to collect outstanding taxes). The government sold the house to Daniel Ito for $175,000. The government applied almost $90,000 of the sale price to settle Michael's tax liability (swollen to that figure, we take it, by the accrual of interest and additional penalties), and another $4,663 to settle Valerie's.

### The Lawsuits

On March 17, 1989 (five days before the government sold his house), Michael Geiselman sued the United States in federal district court in Massachusetts. He alleged that the government's lien on his property was ineffective because the government had committed procedural errors in determining the deficiency and assessing the tax liability. Michael unsuccessfully sought a temporary restraining order barring the sale, but pressed the suit even after the sale in order to "quiet title" to the property and to obtain a permanent order unwinding the transfer and returning title to him. Valerie was not a party to this lawsuit.

Valerie is, however, party to a second lawsuit which she and Michael filed in a Massachusetts Superior Court in January 1990. This suit named the United States, Gerard Esposito (District Director of the IRS) and Daniel Ito (the buyer of the Geiselmans' house) as defendants. This suit, too, alleged procedural defects in the tax collection process and sought an order effectively returning title to the Geiselmans. The government and Esposito answered; Ito answered and counterclaimed for damages caused by the Geiselmans' continued occupation of the premises.

The government removed the second lawsuit to the federal district court, where the two cases were consolidated. The district court eventually granted summary judgment to the federal defendants. These appeals followed.

**4**

### Appellate Jurisdiction

Appeal No. 91–1738 springs from the first lawsuit, in which Michael alone sued only the United States. As the grant of summary judgment settled all outstanding issues between both parties to that case, the judgment was "final" and we have jurisdiction over the appeal.

■ Appeal No. 91–1501, however, arises from the second lawsuit, involving both Michael and Valerie as plaintiffs, and Daniel Ito and Gerard Esposito, as well as the government, as defendants. The federal defendants contend, and we agree, that we lack jurisdiction over this latter appeal. The district court granted summary judgment to the government and Esposito in the second lawsuit, but the record reveals no disposition of the Geiselmans' claim against Ito or of Ito's counterclaim against them. The district court did not certify the judgment for immediate appeal pursuant to Fed.R.Civ.P. 54(b).

■ "It is elementary that a grant of summary judgment as to some parties in a multi-party litigation does not constitute a final order unless the requirements of Fed. R.Civ.P. 54(b) are met." *Brookens v. White,* 795 F.2d 178, 179 (D.C.Cir.1986). *See also Spiegel v. Trustees of Tufts College,* 843 F.2d 38 (1st Cir.1988). Similarly, a claim and a counterclaim constitute "multiple claims," and a decision on only one does not constitute a final appealable order absent compliance with Rule 54(b). *Belmont Place Associates v. Blyth, Eastman, Dillon & Co.,* 565 F.2d 1322 (5th Cir.1978) (per curiam); *Bank of New York v. Hoyt,* 108 F.R.D. 184, 186–87 (D.R.I.1985). We therefore conclude that this court lacks jurisdiction to hear appeal No. 91–1501.

### The Merits of No. 91–1738

■ Michael Geiselman's lawsuit against the government involved a narrow range of issues. Because Michael did not petition the Tax Court for a redetermination of the deficiency, and because he had not complied with the jurisdictional prerequisites to the maintenance of a tax refund action, *see* 26 U.S.C. § 7422(a) (administrative refund claim must be filed before taxpayer can sue), he did not put the merits of the tax assessment before the district court—that is, he could not and did not contest his liability for the amount of tax assessed. The district court had jurisdiction, under 28 U.S.C. § 2410(a), only to determine whether the government's lien on Michael's house was so tainted by *procedural* defects as to render it, and the subsequent seizure and sale, a nullity. *See Schmidt v. King,* 913 F.2d 837, 839 (10th Cir.1990); *Elias v. Connett,* 908 F.2d 521, 527–28 (9th Cir.1990); *Pollack v. United States,* 819 F.2d 144, 145 (6th Cir.1987) and cases cited therein.

Michael alleged the existence of three procedural defects: (1) he had not been issued a "statutory" notice of deficiency, (2) the government had not properly assessed his tax liability, and (3) he had not been issued the "mandated" notice of assessment and demand for payment.[1] He also contended that the government could not obtain a lien on the house because he and Valerie owned the property as tenants by the entirety.

### Notice of Deficiency

The Internal Revenue Code authorizes the IRS to issue notices of deficiency, but does not say what form these notices must take or what information they must contain. 26 U.S.C. § 6212(a). But, because it is clear that the purpose of the notice "is only to advise the person who is to pay the

---

1. The government concedes that the alleged failures to assess properly, and to send valid notices of assessment and demands for payment, are procedural defects cognizable under Section 2410. The government argues, however, that the district court had no jurisdiction under Section 2410 to consider the alleged defect in the notice of deficiency. *Compare Elias v. Connett,* 908 F.2d at 527 (no jurisdiction under Section 2410 to consider claim that notice of deficiency was null and void, as that went to merits of assessment rather than procedural validity of lien) with *Robinson v. United States,* 920 F.2d 1157, 1161 (3d Cir.1990) (jurisdiction under Section 2410 to consider claim that IRS never sent notice of deficiency, as failure to do so would block taxpayer's access to Tax Court and thus "impugn the procedural validity of the assessment"). We need not attempt to split this jurisdictional hair because we find no evidence that any of the alleged defects existed.

deficiency that the Commissioner means to assess him; anything that does this unequivocally is good enough." *Olsen v. Helvering*, 88 F.2d 650, 651 (2d Cir.1937) (Hand, L., J.). The minimum requirement is that the notice "set forth the amount of the deficiency and the tax year involved." *Alford v. Commissioner of Internal Revenue*, 800 F.2d 987, 988 (10th Cir.1986). *See also Estate of Yaeger v. Commissioner of Internal Revenue*, 889 F.2d 29, 35 (2d Cir. 1989) (notice generally must indicate that deficiency has been determined and identify taxpayer, taxable year involved and amount of deficiency); *Stoecklin v. Commissioner of Internal Revenue*, 865 F.2d 1221, 1224 (11th Cir.1989); *Donley v. Commissioner of Internal Revenue*, 791 F.2d 383, 384–85 (5th Cir.1986).

■ The notice of deficiency issued to Michael satisfied these minimum requirements. In fact, the attachments to the notice (which ran to twenty-three pages) went beyond the minimum and detailed the elements and calculation of the deficiency. Nevertheless, Michael contends that the notice was defective for two reasons. First, he says that the notice failed to articulate either the exact taxing statute upon which the deficiency was based, or the factual basis for determining the deficiency, thus depriving him of the opportunity to mount an informed attack on the deficiency in the Tax Court. This argument could work only if we were to read an unprecedented requirement of specificity into a simple and notably unspecific notice provision. We see no reason to do so. Had Michael petitioned the Tax Court for a redetermination, he would have had ample opportunity to discover the grounds of the deficiency and prepare an educated challenge. *See* Rules of Practice and Procedure of the United States Tax Court, Rules 70 through 104. *See also Abatti v. Commissioner of Internal Revenue*, 644 F.2d 1385, 1389–90 (9th Cir.1981) (notice of deficiency valid even though IRS relied in Tax Court on Code provision not mentioned in notice).

■ Michael also argues that the notice of deficiency was tainted by the IRS' failure to prepare adequate "substitute returns." 26 U.S.C. § 6020(b)(1) authorizes the Secretary to make a substitute tax return for any person who, for whatever reason, fails to make one on his own. The record here contains two such substitute returns, made out on Michael's behalf. It is true that these documents contain only Michael's name, social security number and address; his filing status and number of exemptions. The returns reflect no calculation of income or tax liability; they are not even signed, which may deprive them of legal vitality. *See* 26 U.S.C. § 6020(b)(2) ("[a]ny return so made *and subscribed* ... shall be ... good and sufficient for all legal purposes") (emphasis added).

■ The substitute returns thus may have been of no practical or legal value to the IRS in calculating Michael's deficiency or preparing the notice, but that fact (if it is a fact) has no consequence in this case. The Internal Revenue Code's deficiency procedures "do not require the Commissioner to prepare a return on a taxpayer's behalf before determining and issuing a notice of deficiency." *Roat v. Commissioner, Internal Revenue Service*, 847 F.2d 1379, 1381 (9th Cir.1988). When a taxpayer fails to file any return, "it is as if he filed a return showing a zero amount for purposes of a deficiency." *Schiff v. United States*, 919 F.2d 830, 832 (2d Cir. 1990). The deficiency is simply "the amount of tax due," *Laing v. United States*, 423 U.S. 161, 175, 96 S.Ct. 473, 481, 46 L.Ed.2d 416 (1976), and it can be calculated, and the notice prepared, on that basis. *See also Christensen v. United States*, 733 F.Supp. 844, 852 (D.N.J.1990); *Hartman v. Commissioner of Internal Revenue*, 65 T.C. 542 (1975).

*Assessment*

■ Under 26 U.S.C. § 6203, an assessment is made "by recording the liability of the taxpayer in the office of the Secretary." In practice, the IRS makes assessments by having an assessment officer fill out and sign a "summary record of assessment," also known as a Form 23C. In this case, the government did not provide the district court with an actual Form 23C, but

it did submit several Certificates of Assessments and Payments (Form 4340) which listed the "23C date" (the date the assessment officer signed the Form 23C) for the initial assessments made against Michael for each tax year in which he failed to file a return, and for each subsequent assessment of interest on the underlying tax liability.

Michael's argument, that the "Form 4340, itself, cannot prove a valid assessment was executed," falls beneath the weight of authority. Certificates of Assessments and Payments are "routinely used to prove that tax assessment has in fact been made." *Rocovich v. United States*, 933 F.2d 991, 994 (Fed.Cir.1991). They are "presumptive proof of a valid assessment." *United States v. Chila*, 871 F.2d 1015 (11th Cir.1989). *See also United States v. Miller*, 318 F.2d 637, 639 (7th Cir.1963); *Rossi v. United States*, 755 F.Supp. 314, 318 (D.Or.1990); *United States v. Nuttall*, 713 F.Supp. 132, 137 n. 8 (D.Del.1989); *United States v. Dixon*, 672 F.Supp. 503, 505 (M.D.Ala.1987); *United States v. Posner*, 405 F.Supp. 934, 937 (D.Md.1975). *Cf. Brewer v. United States*, 764 F.Supp. 309, 315–16 (S.D.N.Y.1991) (issue of fact remained where Form 4340 did not contain 23C dates). Absent any proof to the contrary, the district court had more than sufficient reason to conclude that the IRS had made assessments against Michael; it had no reason to conclude otherwise.

### Notice of Assessment and Demand for Payment

█ The Certificates of Assessments and Payments, which listed "First Notice" dates for each assessment, also constituted presumptive proof that the IRS gave notice of the assessments and made demands for payment from Michael. *See United States v. Chila*, 871 F.2d at 1019; *United States v. Lorson Electric Co.*, 480 F.2d 554, 555 (2d Cir.1973). In addition, the Notice of Federal Tax Lien forms reproduced in the addendum to Michael's brief say that "demand for payment has been made."

### Tenancy by the Entirety

Michael and Valerie owned their house as tenants by the entirety. Michael argues that the government could not obtain a valid lien on property held in this manner, and thus could not seize and sell the house to satisfy his tax obligation.

A tax lien in favor of the government attaches to "all property and rights to property" belonging to the delinquent taxpayer. 26 U.S.C. § 6321. To determine whether and to what extent a taxpayer has "property" or "rights to property," federal courts look to state law, "for it has long been the rule that 'in the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property ... sought to be reached by the statute.... [Section 6321] creates no property rights but merely attaches consequences, federally defined, to rights created under state law....' " *Tony Thornton Auction Service, Inc. v. United States*, 791 F.2d 635, 637 (8th Cir.1986) (quoting *Aquilino v. United States*, 363 U.S. 509, 512–14, 80 S.Ct. 1277, 1279–81, 4 L.Ed.2d 1365 (1960)).

Although he does not cite them, we presume that Michael intends to rely here on cases which hold that the government cannot levy on property held through a tenancy by the entirety because under the "peculiar legal fiction governing tenancies by the entirety in some States, no tax lien could attach in the first place because neither spouse possessed an independent interest in the property." *United States v. Rodgers*, 461 U.S. 677, 703 n. 31, 103 S.Ct. 2132, 2147 n. 31, 76 L.Ed.2d 236 (1983). *See, e.g., Cole v. Cardoza*, 441 F.2d 1337, 1343 (6th Cir.1971); *United States v. American National Bank of Jacksonville*, 255 F.2d 504, 506–7 (5th Cir.1958); *United States v. Hutcherson*, 188 F.2d 326, 331 (8th Cir. 1951).

█ The state law used to define "rights to property" in those cases, however, is different from the law of Massachusetts applicable here. The Missouri law at issue in *Hutcherson*, for example, created an estate in which neither husband nor wife "has ... any separable or distin-

guishable individual interest." 188 F.2d at 330. Massachusetts law governing tenancies by the entirety, on the other hand, gives the husband a significant personal interest in the estate that is both distinguishable and separable from that of his wife. Husband and wife each owns an indefeasible right of survivorship in the whole tenancy, but as long as both spouses are alive the husband has exclusive right to possession, rents and profits from the property; the wife has no right to possession or profits, and cannot convey her interest without her husband's consent. The husband's creditors can attach his interest; the wife's creditors can attach nothing. The wife, in short, has no functioning rights in the property during her husband's lifetime. *Friedman v. Harold,* 638 F.2d 262, 264 (1st Cir.1981) (surveying Massachusetts law).[2]

 Because Massachusetts law gave Michael "rights to" the house to which the government's tax lien could attach, the lien was valid, and so was the sale, at least with respect to Michael's interest. This appeal, involving as it does only Michael's claim against the government, is not an occasion to consider whether Massachusetts law also gave Valerie a "right to" property to which the government's lien could attach.

### Conclusion

We need go no further. Appellants' remaining arguments do not warrant discussion. Their "Verified Motion for Further Reconsideration of Court Denial of Oral Argument" is *denied.* Appeal No. 91–1501 is *dismissed* for lack of appellate jurisdiction. The judgment at issue in appeal No. 91–1738 is *affirmed.* Costs shall be taxed in favor of the appellees in both appeals.

---

**2.** In 1979, the Massachusetts legislature enacted M.G.L. c. 209 § 1, which largely abrogated the common-law principles stated in the text and equalized the spousal interests in tenancies by the entirety. The statute, however, does not apply to tenancies by the entirety created before February 11, 1980. *Turner v. Greenaway,* 391 Mass. 1002, 1003, 459 N.E.2d 821 (1984) (rescript). There is no dispute that the tenancy here was created before the statute became effective.