[NOT FOR PUBLICATION]

UNITED STATES COURT OF APPEALS

For The FIRST CIRCUIT

No. 92-2192

DAVID & ANN MARIE NIEMELA,

Plaintiffs, Appellants,

v.

UNITED STATES OF AMERICA,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Torruella, Cyr and Stahl,
Circuit Judges.

David W. Niemela and Ann Marie Niemela on brief pro se.

A. John Pappalardo, United States Attorney, James A. Bruton,

Acting Assistant Attorney General, Gary R. Allen, David I. Pincus, and

Jordan L. Glickstein, Attorneys, Tax Division, Department of Justice,

on brief for appellee.

June 11, 1993

Per Curiam. Claiming that the Internal Revenue Service

(IRS) violated an array of statutory requirements in its

effort to collect unpaid taxes, David and Ann Marie Niemela

filed this pro se action seeking to "quiet title" to their

property and requesting injunctive relief and damages. From

an award of summary judgment to the IRS, they now appeal. We

agree with the district court's conclusions in all but two

particulars, as to which we find the IRS' evidence wanting.

I.

David Niemela, a plumber by trade and a member of an

organization opposed to this country's system of income

taxation, filed a "protest return" for 1980 on behalf of

himself and his wife. For the years 1981 and 1982, the

Niemelas filed no returns at all. Prompted by the protest

return, the IRS audited their 1979 return and determined that

a deficiency existed for that year. The Niemelas sought to

challenge this finding in Tax Court, but their petition was

later dismissed on procedural grounds. Thereafter, based on

"substitute returns" prepared under 26 U.S.C. 6020, the IRS

determined that deficiencies also existed for the years 1980-

82. As to these findings, no Tax Court petition was filed.

After allegedly making the requisite assessments and issuing

the requisite notices, the IRS attempted to recoup the

deficiencies--first by levying on money owed to David Niemela

by a local school, and then by filing various liens on the

-2-

couple's real and personal property. The IRS calculates

that, as of 1989, a debt of some $180,000 remained unpaid,

consisting of back taxes, interest and penalties.

The assessment and notice requirements at issue here can

be outlined as follows. Upon determining that a deficiency

exists, the IRS first must send a notice of deficiency to the

taxpayer. 26 U.S.C. 6212. The taxpayer then has ninety

days to file a petition in the Tax Court in order to contest

the deficiency determination. Id. 6213. If such a

petition is filed, the IRS is barred from taking any action

to collect the debt until the Tax Court decision has become

final. Id. 6213(a), 6215. If no such petition is filed

(or once the Tax Court decision becomes final), the IRS must

then make an assessment of the deficiency, id. 6203, and

send a notice and demand for payment to the taxpayer, id.

6303. If the deficiency is not paid, a lien arises in favor

of the United States on all real and personal property of the

taxpayer, id. 6321, as of the date of the assessment, id.

6322. The IRS may thereafter levy upon such property after

providing the taxpayer with notice of its intention to do so.

Id. 6331.

The Niemelas contend that none of these safeguards was

followed. In particular, they argue that: (1) no proper

notices of deficiency were sent; (2) no assessments of the

deficiencies were made; (3) no notices and demands for

-3-

payment were mailed; and (4) no notice of intent to levy was

provided. For these reasons, they say that relief is

warranted under the quiet title statute, 28 U.S.C.

2410(a).1 They also seek damages pursuant to three other

provisions: under 26 U.S.C. 7431 for unlawful disclosure of

return information; under 7432 for failure to release

liens; and under 7433 for unauthorized collection actions.

Finally, they seek an injunction under 7426 for wrongful

levy. Apart from these various claims (each of which the

district court rejected), the Niemelas advance an additional

contention on appeal: that the district court erred in

denying their motion under Fed. R. Civ. P. 56(f) to defer

consideration of the summary judgment motion pending further

discovery. We review the district court's award of summary

judgment in plenary fashion, construing the record in the

light most favorable to the opposing party. See, e.g.,

Pagano v. Frank, 983 F.2d 343, 347 (1st Cir. 1993).

II.

1. A taxpayer in a quiet title action cannot contest the
merits of the underlying tax assessment, but can challenge
alleged defects in the procedures giving rise to an IRS lien
or levy. See, e.g., Geiselman v. United States, 961 F.2d 1, 6

(1st Cir.) (per curiam), cert. denied, 113 S. Ct. 261 (1992);

McMillen v. Department of Treasury, 960 F.2d 187, 189 (1st

Cir. 1991) (per curiam). In Geiselman, we noted that courts

had divided as to whether a defect in a notice of deficiency
may be challenged in such an action. See id. at 6 n.1. We

need not address this issue here, however, as the government
has not raised it, and as we find no such defect in any
event.

-4-

The Niemelas have devoted only cursory attention on

appeal to several of these claims, to the point where a

waiver might well be inferred. Nonetheless, in light of

their pro se status, we shall address each of their

contentions in turn.

A. Notices of Deficiency

The IRS submitted copies of two notices of deficiency

said to have been sent to the Niemelas: one dated April 6,

1983 pertaining to the year 1979, the other dated September

7, 1988 pertaining to the years 1980-82.2 The Niemelas

argue, somewhat paradoxically, both that no notices of

deficiency were sent and that such notices were inadequate in

form. Yet in 50 of their original complaint, they

acknowledged having received the notices.3 And a notice of

deficiency is adequate so long as it satisfies the "minimum

requirements" of setting forth the amount of the deficiency

and the tax year involved. Geiselman v. United States, 961

F.2d 1, 5 (1st Cir.) (per curiam), cert. denied, 113 S. Ct.

261 (1992). The notices here did just that.

2. Contrary to the taxpayers' suggestion, the IRS does not
contend that the second notice was sent on February 9, 1989.
Its statement to that effect in its brief is obviously an
inadvertent misstatement.

3. Section 6212 requires only that the IRS mail a notice of
deficiency to the taxpayer's last home address, not that the
taxpayer actually receive it. See, e.g., Guthrie v. Sawyer,

970 F.2d 733, 737 (10th Cir. 1992); United States v. Zolla,

724 F.2d 808, 810 (9th Cir.), cert. denied, 469 U.S. 830

(1984).

-5-

B. Assessments; Notices and Demands for Payment

An assessment is made "by recording the liability of the

taxpayer in the office of the [Treasury] Secretary in

accordance with rules or regulations prescribed by the

Secretary." 26 U.S.C. 6203.

The assessment shall be made by an assessment
officer signing the summary record of assessment.
The summary record, through supporting records,
shall provide identification of the taxpayer, the
character of the liability assessed, the taxable
period, if applicable, and the amount of the
assessment.... The date of the assessment is the
date the summary record is signed by an assessment
officer.

26 C.F.R. 301.6203-1. Within sixty days of an assessment

being made, the IRS must "give notice to each person liable

for the unpaid tax, stating the amount and demanding payment

thereof." 26 U.S.C. 6303(a). Such notice must be left at

the taxpayer's dwelling or usual place of business or sent by

mail to his last known address. Id. No particular form is

required, so long as the notice "provides the taxpayer with

all the information required under ... 6303(a)." Elias v.

Connett, 908 F.2d 521, 525 (9th Cir. 1990).

The IRS alleges that, for the 1979 deficiency, an

assessment was made and notice sent on January 22, 1985; it

states that, for the 1980-82 deficiencies, assessments were

made and notices sent on February 9, 1989. To substantiate

these claims, the IRS did not submit copies of the summary

-6-

record, known as Form 23C,4 nor did it provide copies of the

actual notices and demands for payment. Instead, it provided

several "certificates of assessments and payments." Known as

Form 4340, these are computer-generated transcripts showing

all transactions in a taxpayer's account for a particular

year. Each of the certificates contains a column entitled

"23C Date," which lists the date or dates on which the

assessment officer signed a Form 23C. And each contains a

notation entitled "First Notice," which documents when notice

and demand for payment was sent.

We held in Geiselman, in accordance with the vast weight

of authority, that such certificates are "routinely used" to

prove that the assessment and notice procedures were

satisfied. 961 F.2d at 6. More particularly, we held that

the 23C Date is presumptive proof that a valid assessment

occurred, and that the First Notice is likewise presumptive

proof that the IRS gave notice and demand for payment.5

4. The taxpayers, however, did obtain copies of the
applicable Forms 23C through an earlier Freedom of
Information Act request and attached them to their pleadings
below. As these documents reveal, and as other courts have
noted, a Form 23C contains no individualized information as
to any specific taxpayer, but rather simply summarizes the
total assessments made by the IRS service center for each
class of tax on a particular day. See, e.g., Stallard v.

United States, 806 F. Supp. 152, 158 (W.D. Tex. 1992).

5. The Niemelas allege that the certificates are
inadmissible for sundry reasons--for example, that they lack
a Treasury seal, were not properly certified, are hearsay,
are not best evidence, and were prepared for purposes of this
litigation. These and related arguments have been rejected

-7-

Id.; accord, e.g., Farr v United States, F.2d , 1993

WL 86986, at *2 (9th Cir. 1993 ("certificates were proper

evidence of the propriety of the assessment proceedings in

all particulars"); Long v. United States, 972 F.2d 1174, 1181

(10th Cir. 1992); Gentry v. United States, 962 F.2d 555, 557

(6th Cir. 1992); Rocovich v. United States, 933 F.2d 991, 994

(Fed. Cir. 1991); United States v. Chila, 871 F.2d 1015,

1017-18 (11th Cir.), cert. denied, 493 U.S. 975 (1989).

With one exception, the certificates here contain 23C

Date and First Notice entries that substantiate the IRS's

claim that the assessments were made and the notices mailed

on the dates indicated. Nothing offered by the Niemelas

calls this evidence as a whole into question. The one

exception is the absence in the 1982 certificate of any 23C

date corresponding to the alleged February 9, 1989

assessment. On account of this omission, and because the IRS

relied solely on the certificate for its proof on this issue,

we conclude that a factual dispute remains as to whether a

valid assessment occurred for the year 1982.6 See, e.g.,

on numerous occasions. See, e.g., Long v. United States, 972

F.2d 1174, 1181 (10th Cir. 1992); Hughes v. United States,

953 F.2d 531, 539-40 (9th Cir. 1992); McCarty v. United

States, 929 F.2d 1085, 1089 (5th Cir. 1991).

6. To be sure, there are other intimations in the record
that an assessment did occur for that year. The 1982
certificate contains a First Notice entry for February 9,
1989; the sending of notice and demand suggests (but does not
confirm) that an assessment was first made. In addition, the
liens filed on July 10, 1989 make reference to an assessment

-8-

Brewer v. United States, 764 F. Supp. 309, 315-16 (S.D.N.Y.

1991) (issue of fact remained where certificate did not

contain 23C dates) (noted in Geiselman, 961 F.2d at 6).

C. Notice of Intent to Levy

As mentioned, the IRS in November 1986 levied on monies

owed by the North Middlesex Regional School System to David

Niemela, presumably in response to the 1979 deficiency which

had been assessed the previous year. The school ended up

forwarding approximately $790 to the IRS. The Niemelas claim

that no notice of intent to levy was provided, as required by

26 U.S.C. 6331(d).7 The government failed to address this

claim in its various submissions, either below or on appeal,

and the district court made no mention of it in its decision.

for 1982. Most important, the taxpayers have submitted a
copy of their Individual Master File (obtained through a
Freedom of Information Act request). For the year 1982, in
entries dated February 9, 1989, the deficiency, penalties and
interest are all listed, together with the notation "ASED."
We assume, but are reluctant to conclude without
confirmation, that this refers to an assessment. Under the
circumstances, we think a limited remand for clarification on
this point is warranted--either through a renewed motion for
summary judgment or by other means.

7. See also 26 C.F.R. 301.6331-2(a):

Levy may be made upon the salary or wages of a
taxpayer for any unpaid tax only after the district
director ... has notified the taxpayer in writing
of the intent to levy. The notice must be given in
person, left at the dwelling or usual place of
business of the taxpayer, or be sent by mail to the
taxpayer's last known address, no less than 10 days
before the day of levy. The notice of intent to
levy is in addition to, and may be given at the
same time as, the [ 6331] notice and demand ....

-9-

This is hardly surprising. The Niemelas have advanced a

welter of prolix, often far-fetched, allegations, accompanied

by a profusion of supporting materials.8 And their

complaint contains only an oblique reference to the alleged

lack of notice of intent to levy--identifying such

requirement only by statutory citation, not by name.9

Nonetheless, construing the complaint liberally in light of

the Niemelas' pro se status, we think it can and should be

read to advance such a claim. We also note that the Niemelas

voiced this allegation more explicitly in subsequent

submissions, such as in their response to the IRS's motion

for summary judgment and in their Rule 56(f) motion to defer.

Accordingly, we think a remand is warranted as well for

consideration of this claim.10

8. For example, in their original complaint, the taxpayers
alleged, inter alia, that the failure to publish Treasury

Department delegation orders in the Federal Register deprived
the IRS of authority to collect taxes, and that the use of
Form 1040 was invalid under the Paperwork Reduction Act of
1980.

9. The amended complaint asserts ambiguously that the IRS
failed to send "valid lawful Notices of Deficiency, or
Notices of Assessment and Demand for Payment based on Form
23C Certificate of Assessment and other required

documentation, as required by Sections 6212(a) and (b),

6303(a), and 6331(b) and (d)(2) ...." Amended Compl. 21

(emphasis added). Their original complaint contained
identical language.

10. It appears from the amended complaint that no ongoing
levy is in place, and that the taxpayers are seeking simply
to recover previously garnisheed wages now in the IRS' hands.
If so, a quiet title action may not lie. See, e.g., Farr,

F.2d at , 1993 WL 86986, at *2; Hughes, 953 F.2d at

-10-

D. Claims for Damages and Injunctive Relief

The Niemelas contend that the IRS is subject to damages

for unlawfully disclosing return information to third parties

in connection with the issuance of the liens and levy. This

claim, as they acknowledge, is largely derivative of those

described above. Under 26 U.S.C. 7431, a taxpayer may

recover damages for the intentional or negligent disclosure

of return information in violation of 6103. Section 6103,

in turn, establishes the general rule that such information

is confidential, subject to various enumerated exceptions.

It is well settled that one such exception, contained in

6103(k)(6), authorizes the disclosure of tax return

information to the extent necessary to effect a valid lien or

levy.11 See, e.g., Farr, F.2d at , 1993 WL 86986,

at *3 to *4; Long, 972 F.2d at 1180; Hughes v. United States,

538. Nonetheless, if the notice of intent to levy were
deemed invalid, the taxpayers might still have a viable claim
for damages for unlawful disclosure under 26 U.S.C. 7431.
See, e.g., Rorex v. Traynor, 771 F.2d 383 (8th Cir. 1985).

We express no opinion on these issues, preferring that the
lower court address them in the first instance, if necessary.

11. Section 6103(d)(6) provides that an IRS employee may, in
connection with "his official duties relating to ...
collection activity," disclose return information where
necessary to obtain information "with respect to the
enforcement of any other provision of this title." The
accompanying regulation states that such disclosure is
warranted in order "to apply the provisions of the Code
relating to establishment of liens against [the taxpayer's]
assets, or [a] levy on ... the assets to satisfy any
[outstanding] liability." 26 C.F.R. 301.6103(k)(6)-
1(b)(6).

-11-

953 F.2d 531, 542 (9th Cir. 1992); Maisano v. United States,

908 F.2d 408, 410 (9th Cir. 1990); Bleavins v. United States,

807 F. Supp. 487, 488 (C.D. Ill. 1992) ("In other words, the

IRS may disclose information when attempting to collect

taxes."). Given our earlier findings that the procedures

giving rise to the liens with respect to the assessed

deficiencies for the years 1979-81 were valid, the Niemelas'

7431 claim with respect thereto must fail. On the other

hand, we have found that factual disputes exist as to whether

a proper assessment for 1982 was made and whether a notice of

intent to levy was issued. Should it be determined on remand

that either of these procedures was deficient, the 7431

claim should then be addressed to that limited extent. See,

e.g., James v. United States, 970 F.2d 750, 757 n.13 (10th

Cir. 1992).

Such a "contingent" remand is likewise appropriate for

the Niemelas' 7433 claim. That provision permits the

recovery of damages for the IRS' intentional or reckless

disregard of any provision of the tax laws "in connection

with any collection of Federal tax." 26 U.S.C. 7433(a).

The Niemelas claim entitlement to such relief on account of

the allegedly deficient assessment and notice procedures

discussed above. Again, however, the only potential defects

involved the assessment for 1982 and the notice of intent to

levy. And because 7433 applies only to actions occurring

-12-

after November 10, 1988, see, e.g., Gonsalves v. Internal

Revenue Service, 975 F.2d 13, 16-17 (1st Cir. 1992) (per

curiam), any defect in the 1986 levy would provide no basis

for recovery. By contrast, should the assessment for 1982 be

deemed invalid, a 7433 claim might lie to the extent that

the 1989 lien pertained to the deficiency for that year.12

The district court should likewise address this issue on

remand should it prove necessary.

The Niemelas' remaining two claims require little

comment. Section 7432 authorizes an award of damages where

the IRS fails to release a lien in accordance with 6325--

i.e., where the lien is satisfied or unenforceable or a bond

is accepted by the Treasury Secretary. There has been no

showing that any of these conditions has been satisfied.

Section 7426, in turn, permits an award of injunctive relief

and damages for wrongful levy. Yet only a person "other than

the person against whom is assessed the tax out of which such

levy arose" may file such an action. 26 U.S.C. 7426(a)(1).

The Niemelas obviously do not fit such description.

E. Rule 56(f) Motion to Defer

Finally, the Niemelas argue that the district court

erred in granting summary judgment to the IRS without

12. The government argues that the Niemelas' 7431 claim
has been superseded by 7433, and that their 7433 claim is
barred for failure to exhaust administrative remedies. We
leave these issues for the district court to decide in the
first instance, if necessary.

-13-

allowing them an adequate opportunity to obtain discovery.

The Niemelas sought to obtain a multitude of documents

pertaining to the assessment and notice procedures, along

with depositions of various IRS officials with regard

thereto--all without success.13 They later asked that any

ruling on the IRS' summary judgment motion be deferred

pending such discovery, and filed a detailed affidavit

attempting to explain how such materials would lead to "facts

essential to justify [their] opposition" to the motion. Fed.

R. Civ. P. 56(f). In the course of its ruling on the summary

judgment motion, the district court denied this request on

the ground that none of the proposed discovery "could

plausibly be said to have led to the development of evidence

actually relevant to my disposition of the government's

motion." We review an order denying relief under Rule 56(f)

for abuse of discretion. See, e.g., Bank One Texas, N.A. v.

A.J. Warehouse, Inc., 968 F.2d 94, 100 (1st Cir. 1992).

A party seeking a Rule 56(f) deferral must, inter alia,

"articulate a plausible basis for the belief that

discoverable materials exist which would raise a trialworthy

issue." Price v. General Motors Corp., 931 F.2d 162, 164

13. The IRS declined to respond to such requests pending
decision on its motion to dismiss or in the alternative for
summary judgment. The Niemelas then moved to compel
production, and the IRS responded with a motion for a
protective order. These various motions were never acted on
by the court.

-14-

(1st Cir. 1991); see also Mattoon v. City of Pittsfield, 980

F.2d 1, 8 (1st Cir. 1992) (must show that "specified

discoverable material facts" likely exist). While the

Niemelas sought materials pertaining to all aspects of the

collection process, their request focused on the original

documents underlying the assessments--the "supporting

records" mentioned in 26 C.F.R. 301.6203-1 from which Form

23C is prepared. Their request in this respect was two-

pronged. They contended that they were specifically entitled

to such records under the terms of the regulation. And they

argued more generally that obtaining such evidence was their

only means of rebutting the presumption of validity arising

from the Form 4340 certificates.

The IRS' submission of the certificates satisfied the

disclosure requirements of 26 C.F.R. 301.6203-1. That

regulation specifies that a taxpayer is entitled only to a

copy of the "pertinent parts" of the assessment record.14

And as the Ninth Circuit has explained:

Those pertinent parts need only provide the five
items listed in the Regulations [taxpayer's name,
date of assessment, character of liability, tax
period if applicable, and amounts assessed]....
Neither the Tax Code nor the Treasury Regulations
require those pertinent parts to be original

14. Section 301.6203-1 states in relevant part: "If the
taxpayer requests a copy of the record of assessment, he
shall be furnished a copy of the pertinent parts of the
assessment which set forth the name of the taxpayer, the date
of assessment, the character of the liability assessed, the
taxable period, if applicable, and the amounts assessed."

-15-

documents, and the IRS has selected the certificate
of assessments and payments as the means for
providing the information specified.
.... We therefore conclude that the
plaintiffs are not entitled to the original
supportingdocuments usedtocompilethe summaryrecord.

Gentry, 962 F.2d at 558; see also Hughes, 953 F.2d at 539 &

n.4; Chila, 871 F.2d at 1017. With the exception of a "23C

Date" for the 1982 assessment, the certificates submitted in

the instant case contain all of the specified information.

Assuming arguendo that this regulation does not

prescribe the range of permissible discovery, we likewise

find no abuse of discretion in the court's decision to

address the summary judgment motion without affording the

Niemelas the opportunity to secure such materials. To be

sure, the Niemelas' central argument--that it is difficult,

in the absence of discovery, to adduce evidence rebutting the

presumption of correctness arising from the certificates--is

not without some force. Yet whether or not the supporting

documents underlying the assessments might be deemed relevant

to their claims,15 the circumstances here amply support the

court's ruling.

15. Compare, e.g., Guthrie v. Sawyer, 970 F.2d 733, 738

(10th Cir. 1992) (supporting documents not relevant) and

McCarty v. United States, 929 F.2d 1085, 1088-89 (5th Cir.

1991) (same) with, e.g., Farr, F.2d at

(notwithstanding submission of certificate, taxpayer should
have "been given the opportunity to conduct some discovery
before judgment was entered") and Rand v. United States,

F. Supp. , 1993 WL 127098, at *2 (W.D.N.Y. 1993) (original
notices, while "clear[ly] ... relevant," need not be
produced).

-16-

First, at the root of the Niemelas' Rule 56(f) motion

were the allegations that the certificates were inadequate to

satisfy the regulation's disclosure requirements and were

otherwise inadmissible. As mentioned, these arguments are

misplaced. Second, the Niemelas had already obtained many of

the underlying documents--including all Forms 23C and their

individual master files--through earlier Freedom of

Information Act requests. See Brewer, 764 F. Supp. at 318

(denying Rule 56(f) motion, among other reasons, because of

information obtained through FOIA requests). Third, apart

from their unilateral assertions, the Niemelas articulated no

reason to suspect that procedural irregularities attended the

assessment process.16 And the district court was warranted

in discounting those assertions, inasmuch as the Niemelas

voiced similar allegations with respect to every aspect of

the collection process. Fourth, in light of the number of

claims advanced and the extent to which they were "wrong-

headed" (to use the district court's term), the court could

16. The Niemelas place considerable emphasis on an April
1990 IRS memorandum reporting that a small number of
irregularities had occurred in the process by which the 23C
Forms were signed. Yet, through an FOIA request, the
Niemelas received copies of the 23C Forms applicable to their
assessments. They have voiced no complaint regarding the
signatures appearing thereon. The Niemelas also allege that
the number of entries in their individual master files
differs from the number appearing on the certificates. Any
such discrepancy is beside the point, given that the master
files do contain pertinent entries for each of the dates on
which the assessments in question hereallegedly occurred.

-17-

well have concluded that the discovery requests amounted to a

"fishing expedition."

Finally, we note that the Niemelas' claim in this regard

falls under the vast weight of authority. To be sure, a

handful of lower courts, in unpublished decisions, have

permitted discovery of the original assessment documents or

have granted Rule 56(f) motions for that purpose. The

Niemelas point to several; others exist. Yet in the clear

majority of cases (including dozens of unpublished

decisions), courts have denied such relief, even in the face

of a proper Rule 56(f) affidavit. See, e.g., Guthrie v.

Sawyer, 970 F.2d 733, 738 (10th Cir. 1992); Montgomery v.

United States, 933 F.2d 348, 350 (5th Cir. 1991); McCarty v.

United States, 929 F.2d 1085, 1088-89 (5th Cir. 1991);

Brewer, 764 F. Supp. at 318; Rossi v. United States, 755 F.

Supp. 314, 319 (D. Or. 1990), aff'd, 983 F.2d 1077 (9th Cir.

1993). We are unaware of any appellate court reversing such

a ruling in this context.17

III.

In summary, the judgment is affirmed in part, vacated in

part and remanded. On remand, the sole issues are whether

the assessment for 1982 was valid and whether the IRS

17. We reject without comment the Niemelas' remaining
claims, including the allegation that they were improperly
selected for audit.

-18-

provided notice of intent to levy, along with the damage-

claim issues that are contingent upon those findings.

Affirmed in part, vacated in part and remanded.

-19-