SIG Arms v. Employers Ins. of Wausau  CV-99-466-JD  04/26/00
UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


SIG Arms, Inc.

    v.                                 Civil No. 99-466-JD

                                           Opinion No. 2000 DNH 102

Employers Insurance
of Wausau, et al.


O R D E R


SIG Arms, Inc. filed a declaratory judgment action in state court against its liability and excess insurance carriers, Employers Insurance of Wausau, Gerling America Insurance Company, Zurich Insurance Company, and Zurich-American Insurance Company. The defendants removed the action to this court. Zurich and Zurich-American moved to dismiss, stay, or transfer the case to the District of Illinois, and then withdrew the motion after the related case in the District of Illinois was dismissed. Before the motion to dismiss was withdrawn, Gerling partially joined the motion, asserting that SIG Arm's claim against Gerling should be dismissed for lack of a justiciable case or controversy. SIG Arms objects to Gerling's motion to dismiss.


Standard of Review

Although Gerling titled its motion as a motion to dismiss, it is more properly considered as a motion for judgment on the

pleadings since Gerling has filed its answer. See Fed. R. Civ. P. 12(c) ("After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."). In response to Gerling's motion, SIG Arms filed its objection supported by an appendix of nineteen separate exhibits. Gerling filed a reply memorandum with exhibits attached, and a month later moved for leave to file an additional memorandum with additional supporting material. SIG Arms did not object to Gerling's motion for leave to file an additional memorandum or file any reply of its own. A month has now passed since the last filing.

When a motion for judgment on the pleadings includes extrinsic materials for the court's consideration, it may be converted to a motion for summary judgment under appropriate circumstances. See Rubert-Torres v. Hospital San Pablo, Inc., ___ F.3d ___, 2000 WL 249149 at *1-2 (1st Cir. Mar. 6, 2000). The motion cannot be converted, however, unless the opponent is given adequate notice and an opportunity to present pertinent materials. See Collier v. Chicopee, 158 F.3d 601, 603 (1st Cir. 1998). When parties file additional materials, including affidavits, with or in response to a motion for judgment on the pleadings, they invite conversion and have implicit notice that the submitted materials will be considered. See id. Given the

2

expanded record presented by both parties for the court's consideration and their opportunity to respond to the filings, the motion is converted to one for summary judgment.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The record evidence is taken in the light most favorable to the nonmoving party. See Zambrana-Marrero v. Suarez-Cruz, 172 F.3d 122, 125 (1st Cir. 1999). All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party. See Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 45 (1st Cir. 1999). A party opposing a properly supported motion for summary judgment must present record facts showing a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

## Discussion

SIG Arms is a manufacturer and seller of firearms located in Exeter, New Hampshire. At the time the complaint was filed,

3

eleven lawsuits had been filed by governmental entities against SIG Arms and many other firearm manufacturers and sellers. The suits allege claims to recover the costs related to gun use and injury including expenses for police protection, emergency services, police pension benefits, medical care, losses due to lost productivity and punitive damages. The NAACP had also filed an action seeking equitable relief.

For the period alleged in the underlying suits, SIG Arms had liability insurance coverage through policies issued by Wausau, Zurich, and Zurich-American. SIG Arms also has an excess liability policy issued by Gerling for the one-year period of 1999. The insurers have denied coverage for the underlying claims brought against SIG Arms. SIG Arms brought a declaratory judgment action seeking a declaration as to the insurers' duty to defend SIG Arms in the underlying suits and their obligations to indemnify SIG Arms for liability in the suits.

Gerling contends that it is not a proper party to the suit because, as an excess liability insurer its obligations, if any, will not be ripe until the primary coverage is exhausted by paying claims in the underlying suits. For that reason, Gerling asserts that no justiciable issue presently exists as to its obligations, before the underlying suits are resolved. SIG Arms argues that a justiciable issue exists as to Gerling's contingent

4

obligations because there is a reasonable probability that the claims in the underlying suits will trigger Gerling's excess coverage obligations.

A federal court's jurisdiction to consider a particular claim is a question governed by article III of the federal constitution.[1]  See Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-41 (1937).  Federal jurisdiction depends upon the existence of a controversy (injury, causation, and redressability), and "the party invoking federal jurisdiction bears the burden of establishing its existence."  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103-04 (1998) (interpreting U.S. Const. art. III, § 2). To determine the justiciability of a declaratory

---

[1]SIG Arms relies in part on the New Hampshire declaratory judgment statute, RSA § 491:22, and New Hampshire cases interpreting the statute, to provide a jurisdictional standard in this case.  Although the declaratory judgment cause of action is based on RSA § 491:22, in this diversity case removed from state court, see General Linen Serv. Co., Inc. v. Charter Oak Fire Ins. Co., 951 F. Supp. 15, 17-18 (D.N.H. 1995), the statute does not afford jurisdiction in federal court.  See, e.g., Wolfe v. Gilmour Mfg. Co., 143 F.3d 1122, 1126 (8th Cir. 1998) ("In a diversity case, a court will not address a plaintiff's claims unless the plaintiff meets the 'case or controversy' requirements of article III of the Constitution and also has standing to sue under the relevant state law.").  Therefore, New Hampshire cases interpreting RSA § 491:22 pertain to the scope of the cause of action under that statute but are inapposite to federal jurisdiction.

judgment action, the court must decide "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941); see also Aetna Life, 300 U.S. at 241. SIG Arms, therefore, must show that a present justiciable controversy exists as to Gerling's duty to provide excess insurance coverage for the underlying suits.[2]

In determining whether a justiciable controversy exists as to an excess liability insurer's obligations to its insured, before the underlying suits have been resolved, courts have examined the probability of a recovery in the underlying suits that would trigger excess coverage. See, e.g., Certain Underwriters at Lloyd's v. St. Joe Minerals, 90 F.3d 671, 675 (2d Cir. 1996); Associated Indem. v. Fairchild Indus., 961 F.2d 32,

_____

[2]SIG Arms does not differentiate, for jurisdictional purposes, between Gerling's duty to defend and its duty to indemnify, but instead argues that jurisdiction exists to determine whether there is coverage. For that reason, the court will not consider separately the possibly broader duty to defend. See, e.g., U.S. Fidelity & Guaranty Co., Inc. v. Johnson Shoes, Inc., 123 N.H. 148, 152 (1983) (discussing duties to defend and to indemnify under New Hampshire law); National Elec. Mfrs. v. Gulf Underwriters Inc., 162 F.3d 821, 824 (4th Cir. 1998) (considering excess insurer's duty to defend).

34-35 (2d Cir. 1992); <u>Bankers Trust Co. v. Old Republic Ins. Co.,</u> 959 F.2d 677, 681 (7th Cir. 1992). The question to be resolved is the "'practical likelihood'" that the contingencies necessary to trigger excess coverage will occur. <u>Associated Indem.</u>, 961 F.2d at 35 (quoting 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 2757, at 587 (2d ed. 1983)).

SIG Arms contends a justiciable controversy exists with respect to its right to coverage under the Gerling policy based on its potential liability in the underlying suits. The Gerling policy provides excess coverage for the period between January 1, 1999, and January 1, 2000, over a primary policy issued by Wausau for the same period. The aggregate policy limit of the Wausau policy is $1,000,000 for the one-year period. According to the parties, the Wausau policy is an occurrence policy, so that it applies to covered events that occurred within the one-year policy period. In addition, since the Gerling policy follows the form of the primary policy, it too covers occurrences within the one-year period. Therefore, Gerling's obligations under the policy will be triggered if SIG Arms is found liable for any covered event, or combination of events, that occurred within the covered period, in an amount greater than $1,000,000.

The complaints in the underlying lawsuits do not allege

7

dollar amounts in damages and make claims covering many years. SIG Arms has not shown what specific claims have been made that are pertinent to the 1999 period in question or what dollar amounts of damages might be claimed for that year. Instead, SIG Arms points to a settlement demand letter received from the City of Boston, dated November 24, 1999, in which the city estimated its total damages during the previous six years at $110 million to be allocated among all of the defendant gun manufacturers and sellers. The city also wrote that if the case did not settle, it would seek damages for a longer period and treble damages under the Massachusetts Consumer Protection Act, which would amount to hundreds of millions of dollars. A rough calculation based on the $110 million demand, approximately thirty-two defendants in the Boston suit, and pro-rated for one of six years, suggests that SIG Arm's share of the demand for a one year period would be in the range of .57 million dollars. At that rate, it would not take many successful claims in the underlying suits to exhaust the primary coverage triggering the Gerling policy.

In response, Gerling does not address the settlement letter from the City of Boston. Instead, Gerling contends that Wausau's primary coverage for the 1999 period, together with primary coverage provided by Zurich and Zurich-American for periods from 1990 through 1998 (which have not been shown to be relevant to

8

the 1999 period), is a substantial amount of primary coverage that is not likely to be exhausted by the underlying suits. Gerling states that SIG Arms's liability in the underlying suits is "far from clear" and that the gun manufacturers "have a number of strong defenses."  Gerling does not specifically address the weaknesses in the plaintiffs' theories of liability nor the strengths of SIG Arms's defenses in the underlying cases.  Cf. Certain Underwriters, 90 F.3d at 672-74 (examining liability theory and defenses in detail to determine likelihood of liability).  Gerling also refers to newspaper articles to show that one suit and a part of another have been dismissed, that ten states have passed legislation to bar such suits, and that twelve other states have legislation pending.[3]  The most persuasive argument is that the suits are primarily aimed at injunctive relief, seeking to force gun manufacturers and sellers to abide by certain safety and regulatory requirements, which presumably would not implicate liability insurance.

Gerling's arguments, however, are insufficient to counter the undisputed City of Boston letter that indicates a significant potential liability in at least one of the underlying suits. While Boston seeks injunctive relief, it also continues to demand

_____

[3]SIG Arms submitted its own newspaper article to show the interest of the federal government in the suits.

money damages, and the complaints in the other actions also demand money damages. Gerling does not argue that the underlying suits do not make claims for occurrences in 1999, nor has Gerling pressed an argument that its policy would not cover the underlying claims.

There are many suits still pending against SIG Arms, seeking damages for the same claims raised in the City of Boston suit. Gerling's subjective belief that the claims are weak and that the defenses are strong, without any developed argumentation, does little to undermine the potential for SIG Arms's liability shown by the settlement letter taken in light of similar claims in the other underlying suits. Therefore, although the factual circumstances were not as well developed as they should have been, there appears to be a sufficient practical likelihood that Gerling's excess policy may be triggered by the underlying suits to satisfy the controversy requirement of article III.

## Conclusion

Zurich Insurance Company's motion to dismiss (document no. 11) has been withdrawn and is therefore moot. Gerling's motion to join Zurich's motion to dismiss (document no. 31) was previously granted, reserving the decision on the merits for

10

later consideration.  Gerling's motion to file an additional memorandum (document no. 46) is granted; the memorandum was considered in this decision.  Having considered Gerling's motion to dismiss (document no. 31) on the merits, the motion is denied.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.<br>
District Judge

April 26, 2000

cc:  James Q. Shirley, Esquire
     Mitchell F. Dolin, Esquire
     Joseph K. Powers, Esquire
     Irvin D. Gordon, Esquire
     T. Joseph Snodgrass, Esquire
     Melinda S. Gehris, Esquire
     Kevin C. Devine, Esquire
     Steven D. Pearson, Esquire