**In the Matter of Robert J. ROSEMILLER, Debtor.**

**Bankruptcy No. 92–15370.**

United States Bankruptcy Court, D. New Jersey.

Aug. 25, 1995.

**132**

Robert J. Rosemiller, Laurel Springs, NJ, Pro Se.

Steven W. Ianacone, United States Attorney, Newark, NJ, for Internal Revenue Service.

Robert M. Wood, Chapter 13 Trustee, Manasquan, NJ.

## OPINION

JUDITH H. WIZMUR, Bankruptcy Judge.

We consider here the final resolution of debtor's motion for reconsideration of our ruling on debtor's objection to the proof of claim filed by the Internal Revenue Service. As a corollary, we also consider debtor's supplemental motion, characterized as a motion "to declare government's exhibits inadmissible in evidence."

### FACTS AND PROCEDURAL HISTORY

On November 2, 1992, Robert J. Rosemiller ("debtor") filed a voluntary petition for relief, *pro se*, under Chapter 13 of the Bankruptcy Code. Debtor's assets, as listed in his schedules, included an interest as a "co-tenant" of a single family home with a value of $100,000, encumbered by a $30,000 mortgage held by Fidelity Bond Mortgage Company. Debtor also listed personal property in the amount of $11,420 against which he claimed $3,550 in personal exemptions. In addition to the Fidelity mortgage, debtor scheduled other debts in the amount of $2,182, including an unsecured priority claim held by the United States Internal Revenue Service ("IRS") in the amount of $1,000, an unsecured non-priority claim held by Kennedy Hospital of Cherry Hill in the amount of $182, and an unsecured non-priority claim held by the Medical College of Pennsylvania in the amount of $1,000. As a self-employed artist and sign painter, debtor claimed a monthly income of $4,992.

Debtor filed a Chapter 13 plan on December 2, 1992, proposing to pay the Fidelity mortgage, on which he was current, outside of the plan, and to pay the unsecured creditors in thirty-six equal monthly payments. This court confirmed a plan on March 24, 1993 requiring the debtor to make payments of $98 per month for 36 months.

On March 17, 1993, the IRS filed a proof of claim for $71,071.12. The proof of claim indicated three categories of claims: secured claims, unsecured priority claims, and unsecured general claims. The secured claims included unpaid income taxes from 1984 to 1988, plus interest and penalties, totalling $55,301.30. The unsecured priority claims included estimates of taxes due for 1990 and 1991 plus interest, totaling $13,856.87. The unsecured general claims included a penalty on the 1990 and 1991 tax assessments, totaling $1,913.[1]

On April 4, 1994, the Chapter 13 Trustee filed a motion requesting instructions regarding the treatment of the IRS proof of claim. Debtor objected to the IRS's proof of claim on June 10, 1994, asserting numerous violations of form and procedure. Specifically, debtor raised the following objections to the IRS's proof of claim:

1. The proof of claim was not written under oath or under the penalty of perjury pursuant to 26 U.S.C. § 6065, Rule 1008 of the Bankruptcy Code and 28 U.S.C. § 1746;

2. The proof of claim was an Internal Revenue Service form that "did not conform to the Rules of Bankruptcy";

3. The IRS substituted the term "unsecured general claims" for the term "unsecured non-priority claims" on its proof of claim and such term does not conform to Form 10 of the "Bankruptcy Rules";

4. The IRS did not provide any evidence of a "security interest" for the secured

---

1. On November 8, 1993, the IRS amended its proof of claim to reflect only the "secured claim" in the amount of $55,301.30. A second amendment to the proof of claim was filed on June 30, 1994, adding to the secured claim an unsecured priority claim for the unpaid taxes from 1990 and 1991, and an unsecured general claim for penalties in the amount of $4,664.20. The total indebtedness, according to the second amendment, is $72,492.20.

claim, as provided in Items 4 and 10 of Form 10;

5. The "Authority to Execute Lien and Levy Action" was based on the Internal Revenue Manual, which is of no legal precedent to the court;

6. The IRS exceeded its statutory authority by including estimated tax claims in the category of "unsecured priority claims";

7. The Secretary of the Internal Revenue Service did not, as required by the "plain language" of 26 U.S.C. § 6020, sign under penalty of perjury the "dummy returns" filed on debtor's behalf;

8. The IRS made no legal assessment of debtor's tax indebtedness, because it did not comply with IRS Form 23C; and

9. The proof of claim does not clearly specify to whom the term "United States" or "States" refers and consequently there is no clear creditor.

Asserting that the proof of claim was improperly assessed and filed, debtor argued that the burden of proof shifted to the IRS to prove debtor's liability.

The IRS responded to debtor's motion on June 29, 1994, as follows:

1. Neither the Bankruptcy Code nor Form 10 require that they sign the proof of claim under penalty of perjury;

2. The proof of claim did conform to the Rules of Bankruptcy;

3. The terms "Unsecured General Claims" and "Unsecured Non–Priority Claims" are interchangeable;

4. The IRS lien is a statutory lien under 26 U.S.C. § 6231, not a consensual security interest, and was secured by the filing of a Federal Tax Lien, the details of which are provided in the proof of claim;

5. The IRS has the power to delegate the authority to execute lien and levy authority under 26 U.S.C. §§ 7701(a)(11) and (12);

6. Amendment No. 2 of the Proof of Claim, filed June 30, 1994, lists the unsecured priority claims based on the tax years 1990 and 1991 as fixed liabilities rather than estimated claims;

7. 26 U.S.C. § 6201(a) gives the office of the Secretary the power to assess debtor's tax liability; and

8. A Substitute for Return (SFR) is an appropriate procedural mechanism for the assessment of debtor's tax liability;

9. The term United States refers to the "governmental entity."

In its response, the IRS emphasized the debtor's responsibility to file his own tax returns pursuant to 26 U.S.C. §§ 6012, 6013, 6017 and 6072(a), which he had failed to do for the tax periods in question.

The trustee's motion and the debtor's objections to the IRS proof of claim were considered on July 6, 1994. We rejected debtor's objections and determined, on the trustee's motion, to dismiss debtor's Chapter 13 petition. An order overruling debtor's objections and dismissing the petition was entered July 18, 1994.

On July 28, 1994, debtor moved for reconsideration of the July 18th order, and followed with a motion to strike sections of the IRS pleadings under Rules 11 and 12(f) of the Federal Rules of Civil Procedure. Debtor's motions were heard on October 5, 1994. We examined debtor's arguments at length, rejecting again his objections to the IRS proof of claim. Prior to the entry of a final order, however, we directed the IRS to provide to debtor and the court copies of the Substitute for Returns (SFRs), assessment documents, and the federal tax liens filed in Camden County. In response to our direction, the IRS provided certain information on December 1, 1994, including the following:

1) "Facsimile Federal Tax Lien Document" indicating that a lien was recorded on May 12, 1992, and showing a total amount due of $48,116.99 for the years 1984 through 1988;

2) Several handwritten 1040 forms (for 1984 and 1988) which reflect that they have been "prepared by the ITP Team", containing the debtor's name and social security number, with a slip of paper attached entitled "Deficiency Interest and Penalty Negligence or Fraud Short Form" with figures indicating the following:

| | 1984 | 1988 |
|---|---|---|
| Tax due | $ 4,904.00 | $5,342.00 |
| Interest | $ 4,638.17 | $1,577.01 |
| N/F Int. | $ 2,319.09 | $ 788.51 |
| Penalty | $ 366.00 | $ 267.00 |
| Balance Due | $12,227.26 | $7,974.52 |

3) Transcripts of Certificates of Assessments and Payments for the periods ending December 31, 1984 through December 31, 1990, prepared November 8, 1994; and

4) Notices of Deficiency addressed to debtor as follows:

 a. Letter dated March 26, 1991, for the tax years ended December 31, 1987 and December 31, 1988, with all computations attached.

 b. Letter dated July 29, 1992, for the tax year ended December 31, 1990, with all computations attached.

 c. Letter dated June 23, 1993, for the tax year ended December 31, 1991, with no attachments.

In response to these documents, debtor filed a motion on January 6, 1995, "to declare the government's exhibits inadmissible as evidence", in which the debtor challenged several aspects of the IRS documents submitted. At a hearing on February 14, 1995, both parties were again offered additional opportunity to make submissions, which were received on February 24, 1995. The IRS submitted an affidavit from a Revenue Officer to describe the process by which substitutes for return are filed, collection efforts proceed, and federal tax liens are filed. The debtor also supplemented his submissions with an affidavit which, in large part, repeated pleadings he had filed previously in this matter.

## DISCUSSION

On this motion for reconsideration, we observe at the outset that the bases of our previous rulings recited orally on the record at the hearings on July 6, 1994 and October 5, 1994, are incorporated herein. We seek to focus primarily on those matters which have been raised by the parties since the October 5, 1994, hearing date. As noted above, on that date, although we rejected debtor's arguments objecting to the IRS proof of claim, we left debtor's motion for reconsideration unresolved pending the submission by the IRS of the underlying documents supporting their proof of claim (e.g., substitutes for return, notice of deficiency, assessments and tax levies). The IRS submitted a "Certificate of Assessments and Payments" for each of the tax periods from 1984 through 1990,

but could not locate all substitutes for return or notices of deficiency for the applicable years.

The tax liabilities asserted by the IRS in its proof of claim stem from debtor's failure to file any federal income tax returns or to pay any federal income taxes from 1984 until the present date. As described in an affidavit submitted by Richard Gianandrea, a Revenue Officer/Advisor for the Internal Revenue Service, the following procedure is generally employed by the IRS when a taxpayer has failed to file returns and the IRS receives income information about the taxpayer:

. . . . .

3. The Substitute for Return (SFR) program was developed to deal with taxpayers who do not file voluntarily and for whom the Service has income information available to substantiate a significant income tax liability. . . .

4. The SFR's are adjusted to reflect income reported on information returns (Forms W–2 and 1099) and other sources and a tax liability is proposed to the taxpayer in the form of a statutory notice of deficiency. . . .

5. The taxpayer is then given the opportunity to either file a valid voluntary return, to correct the proposed assessment, or to agree to the proposed assessment.

6. Following these actions, the tax is assessed along with appropriate interest and penalties. . . .

7. When the tax is assessed, the first notice and demand for unpaid tax is mailed on the same day. This is indicated on the Certificate of Assessments and Payments as the First Notice. . . .

8. Ten days later, enforcement authority arises and a notice of federal tax lien may be filed. . . .

. . . . .

11. The Certificate of Assessments and Payments and the notice of Federal Tax Lien are the basis for the Service's secured and priority claims.

The statutory framework for the IRS procedure described by Mr. Gianandrea includes authority to the IRS to produce a SFR under 26 U.S.C. § 6020(b)[2], and direction to inform the debtor of his tax deficiency in the form of a statutory notice of deficiency under 26 U.S.C. § 6212[3]. The notice of deficiency may include not only the actual tax deficiency, but also a delinquency penalty, pursuant to 26 U.S.C. § 6651(a), a negligence penalty, pursuant to 26 U.S.C. § 6653(a)[4], and an estimated tax penalty, pursuant to 26 U.S.C. § 6654. The notice provides a calculation of the assessments and penalties, as well as instructions to contest any delinquency before the United States Tax Court. If there is no response within the statutory time period allowed to petition the Tax Court (in this case, 90 days pursuant to 26 U.S.C. § 6213), the IRS assesses a tax, gives the debtor notice of the assessment and demands payment. 26 U.S.C. § 6201, 6203.

If the taxpayer fails to pay the tax liability after demand, the amount assessed becomes a lien against all of debtor's property, 26 U.S.C. § 6321, as of the time of the assessment. 26 U.S.C. § 6322.

The debtor challenges the IRS documents on several grounds. We will review each challenge in turn.

*"SFR's or "Dummy Returns"*

As noted above, the IRS submitted two handwritten, unsigned 1040 forms (for 1984 and 1988) which they have offered as SFRs prepared by IRS personnel in debtor's case. The forms are mostly blank. The only information provided on each form is on a slip of paper attached to each form entitled "Deficiency Interest and Penalty Negligence or Fraud Short Form", which lists assessments and total liability of the debtor for the taxable period in question. The IRS was unable to locate SFRs for the other years on which their claim is based.

█ Debtor questions the failure of the IRS to produce several of the SFRs and the inadequacies of the SFRs produced. He also argues that the SFRs must be "subscribed by the Secretary" personally in order to be "prima facie good and sufficient for all legal purposes."

█ Debtor contends that section 6020(b), which provides that the Secretary "shall make" a return if any person fails to make a return,[5] means that the Secretary "must" prepare a return. However, this section is permissive rather than mandatory. *See United States v. Stafford,* 983 F.2d 25, 27 (5th Cir.1993) ("although the section authorizes the Secretary to file for a taxpayer, the statute does not require such a filing, nor does it relieve the taxpayer of the duty to file"); *United States v. Powell,* 955 F.2d 1206, 1213 (9th Cir.1991) (section 6020(b) cannot be used to make "lawful the failure to file a return despite the command of § 7203"); *Geiselman v. United States,* 961 F.2d 1 (1st Cir.) *cert. denied* —— U.S. ——, 113 S.Ct. 261, 121 L.Ed.2d 191 (1992). Section 6020(b) authorizes the Secretary to prepare a return in the absence of a return filed by the taxpayer, and requires that such a return be made "from his own knowledge and from such information as he can obtain through testimony or otherwise." The Secretary has statutory authority to prepare the

---

2. **26 U.S.C. § 6020(b)**
 **(b) Execution of return by Secretary—**
 **(1) Authority of Secretary to execute return.—** If any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefor, or makes willfully or otherwise, a false or fraudulent return, the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise.
 **(2) Status of returns.—**Any return so made and subscribed by the Secretary shall be prima facie good and sufficient for all legal purposes.

3. **26 U.S.C. § 6212(a)**

(a) **In general.—**If the Secretary determined that there is a deficiency in respect of any tax imposed by subtitles. A or B or chapter 41, 42, 43, or 44, he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail.

4. This section was amended by Pub.L. 101–239 § 7721(c)(1), effective for returns due after December 31, 1989, substituting provisions relating to the failure to pay a stamp tax for the provisions relating to additions to tax for negligence and fraud.

5. See n. 2.

delinquent returns, but is not statutorily mandated to do so.

■ In a similar context, the First Circuit determined that any inadequacies or the absence of SFRs do not defeat a taxpayer's liability. *Geiselman v. U.S.*, 961 F.2d 1, 5 (1st Cir.1992). In *Geiselman,* one taxpayer failed to file federal income tax returns for five years, and his wife failed to file returns for two years. Two substitute returns were produced by the IRS, made out on the husband's behalf. The returns contained only the husband's name, social security number and address, his filing status and number of exemptions. The returns were not signed, and reflected no calculation of income or tax liability. The court noted the following:

> The Internal Revenue Code's deficiency procedures "do not require the Commissioner to prepare a return on a taxpayer's behalf before determining and issuing a notice of deficiency. *Roat v. Commissioner, Internal Revenue Service,* 847 F.2d 1379, 1381 (9th Cir.1988). When a taxpayer fails to file any return, "it is as if he filed a return showing a zero amount for purposes of a deficiency." *Schiff v. United States,* 919 F.2d 830, 832 (2d Cir.1990). The deficiency is simply "the amount of tax due," *Laing v. United States,* 423 U.S. 161, 175, 96 S.Ct. 473, 481, 46 L.Ed.2d 416 (1976), and it can be calculated, and the notice prepared, on that basis. *See also Christensen v. United States,* 733 F.Supp. 844, 852 (D.N.J.1990); *Hartman v. Commissioner of Internal Revenue,* 65 T.C. 542 (1975).

*Id.* We conclude that the failure of the IRS to produce adequate substitute returns for the tax periods in question does not defeat its claim.

■ Debtor's contention that at least one of the SFRs submitted by the IRS must be disregarded because it has been altered must be rejected. The SFR in question contained a notation of "Dummy Return" on the bottom portion of the original document which did not appear on the copy presented to the court. Counsel for the IRS explained that the copying machine simply did not pick up the bottom portion of the original document, and offered to the debtor the opportunity to examine the original documents at the IRS offices. Since we have discussed above that an SFR is not required as a predicate to the issuance of a notice of deficiency, we need not be detained on this issue.

■ On his motion for reconsideration, debtor repeats his argument that the Secretary of the Treasury is "personally" responsible to prepare his returns pursuant to section 6020(b). This argument is also rejected. The term "Secretary" is defined in the Internal Revenue Code to mean "the Secretary of the Treasury or his delegate." 26 U.S.C. § 7701(a)(11)(B). A delegate means "any officer, employee, or agency of the Treasury Department duly authorized by the Secretary of the Treasury directly, or indirectly by one or more redelegations of authority." 26 U.S.C. § 7701(a)(12). Treasury Regulations specifically allow the Secretary to delegate the authority to prepare a SFR to district directors or other IRS employees. *See* 26 C.F.R. 301.6020–1(b) (authorizing the district director or other authorized internal revenue officer or employee to make the return); 26 C.F.R. 601.104.

■ By definition, the Secretary is personally required to perform the enumerated function without the ability to delegate that responsibility only where the statute refers specifically to the "Secretary of the Treasury". 26 U.S.C. § 7701(a)(11)(A). Section 6020(b) refers only to the "Secretary", which includes the Secretary or his delegate. The Secretary is not required to personally prepare or sign any substituted returns for the debtor.

*"Certificates of Assessments and Payments"*

■ As noted above, in response to our direction, the IRS submitted Certificates of Assessments and Payments for the tax periods ending December 31, 1994 through December 31, 1990. The Certificates, dated November 8, 1994, are each signed by the Supervisor of the Certification Group under the following certification:

> I certify that the foregoing transcript of the taxpayer named above in respect to the taxes specified, is a true and complete transcript for the period stated, of all as-

sessments, penalties, interest, abatements, credits, refunds and advance or unidentified payments relating thereto as disclosed by the records of this office as of the date of this certification.

 Certificates of Assessments and Payments are " 'routinely used to prove that tax assessment has in fact been made,' " *Geiselman v. United States*, 961 F.2d 1, 6 (1st Cir.1992) (quoting *Rocovich v. United States*, 933 F.2d 991, 994 (Fed.Cir.1991)), and are " 'presumptive proof of a valid assessment.' " *Id.* (quoting *United States v. Chila*, 871 F.2d 1015 (11th Cir.1989)). A Certificate of Assessments and Payments is granted a "presumption of correctness." *United States v. Jones*, 877 F.Supp. 907, 912–13 (D.N.J. 1995). Moreover, these certificates qualify as self-authenticating for purposes of the Federal Rules of Evidence, Rule 902. *Craig v. United States*, No. C 93–0298, 1993 WL 280761, *2 (N.D.Cal.1993); *White v. I.R.S.*, 790 F.Supp. 1017 (D.Nev.1990); *Rossi v. United States*, 755 F.Supp. 314 (D.Or.1990) *aff'd* 983 F.2d 1077 (9th Cir.1993); *In re Garm*, 114 B.R. 414 (Bankr.M.D.Pa.1990).

 Debtor submits that the certificates produced by the IRS are invalid because they are not properly verified, as required by 26 U.S.C. § 6065 [6] and 28 U.S.C. § 1746.[7] Debtor is incorrect in this regard. Section 6065 of the Internal Revenue Code has been held to apply only to tax returns filed by a taxpayer. *See Cohen v. United States*, 201 F.2d 386, 393 (9th Cir.) *cert. denied* 345 U.S. 951, 73 S.Ct. 864, 97 L.Ed. 1374 (1953); Sen. Rep. No. 685, 81st Cong., 1st Sess., Part II, § 4 (1949) (the purpose of the statute is to "relieve[ ] the taxpayers of the burden of notarizing their returns"). As to section 1746 of Title 28, debtor's reliance is equally misplaced. In general terms, section 1746 simply provides an optional way to present a sworn statement, oath or affidavit, where such a sworn statement is required.

 Debtor next complains that the Certificate of Assessments and Payments, known as "Form 4340", should not be considered because the certificate is merely a "transcript", or copy, of the original assessment, which should have been made by the IRS on "Form 23C". The government has failed to produce any of the Form 23C's completed in debtor's case.

 Under 26 U.S.C. § 6203,[8] debtor is entitled to a copy of any assessment upon request. The applicable regulation provides that "[i]f the taxpayer requests a copy of the record of assessment, he shall be furnished a copy of the pertinent parts of the assessment which set forth the name of the taxpayer, the date of assessment, the character of the liability assessed, the taxable period, if applicable, and the amounts assessed." 26 C.F.R. § 301.6203–1. *See also Koff v. United States*, 3 F.3d 1297, 1298 (9th Cir.1993) *cert. denied* —— U.S. ——, 114 S.Ct. 1537, 128 L.Ed.2d 190 (1994). It is now well established that the submission of Form 4340 by the IRS to the taxpayer satisfies the IRS

**6.** 26 U.S.C. § 6065 provides that: Except as otherwise provided by the Secretary, any return, declaration, statement, or other document required to be made under any provision of the internal revenue laws or regulations shall contain or be verified by a written declaration that it is made under the penalties of perjury.

**7.** 28 U.S.C. § 1746 reads in relevant part:

Wherever, under any law of the United States' or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported,

evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form: ... (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).
(Signature)".

**8.** § 6203 Method of assessment.

The assessment shall be made by recording the liability of the taxpayer in the office of the Secretary in accordance with rules or regulations prescribed by the Secretary. Upon request of the taxpayer, the Secretary shall furnish the taxpayer a copy of the record of the assessment.
26 U.S.C. § 6203.

statutory obligation to furnish the taxpayer with a copy of the assessment. As noted above, the form is presumptive evidence that the assessments were properly made. *Travis v. United States,* 53 F.3d 340, 1995 WL 242294, *3 (9th Cir.1995) (unpublished decision); *Freck v. I.R.S.,* 37 F.3d 986, 991–92 n. 8 (3d Cir.1994); *United States v. Jones,* 877 F.Supp. 907, 912–13 (D.N.J.1995). The certificate must include the date that the assessment is made, i.e. the date that Form 23C was signed. The existence of " '[t]he "23C Date" on a signed Certificate of Assessments and Payments is sufficient evidence of a valid assessment of a tax on that date.' " *In re Boch,* 154 B.R. 647, 653 (Bankr.M.D.Pa.1993) (quoting *Carroll v. Chivatero,* 1990 WL 118766, *7 (N.D.Ohio 1990)) (emphasis omitted).

In *United States v. Sitka,* 1994 WL 389473 (D.Conn. May 19, 1994), the court described simply and clearly the role in the assessment process of "certificates of assessments and payments" and "forms 23C":

> A tax assessment must comply with 26 U.S.C. § 6203 which provides the following: "The assessment must be made by recording the liability of the taxpayer in the Office of the Secretary ..." Within the aegis of § 6203, the IRS makes an assessment by preparing a signed summary record, known as a "Form 23C." (citations omitted) In addition, the IRS will often prepare a certificate of assessments and payments, referred to as a "Form 4340."

The IRS regularly uses the form 4340 to prove that it has made a tax assessment. (citations omitted) Indeed, it is well established that the Form 4340 is "presumptive proof of a valid assessment" (citations omitted) A prerequisite to the presumption is that the Form 4340 contain a "23C

date," i.e., a date indicating when the Form 23C was signed.

*See also, Koff v. United States,* 3 F.3d 1297, 1298 (9th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 1537, 128 L.Ed.2d 190 (1993); *Geiselman v. United States,* 961 F.2d 1, 5 (1st Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 261, 121 L.Ed.2d 191 (1992); *In re Boch,* 154 B.R. 647, 652 (Bankr.M.D.Pa.1993).

We conclude that the Certificates of Assessments and Payments produced by the IRS (Forms 4340), which contain dates of assessments for each type of assessment entered, are presumptively valid, even in the absence of the production by the IRS of the applicable "Forms 23C".

 Most significantly, we note that debtor has posed no substantive challenge to the correctness or validity of the assessments noted on the Certificates. There is nothing in this record to indicate that debtor filed a petition with the Tax Court for a redetermination of the deficiencies claimed by the IRS. Nor has debtor produced any evidence in this forum supporting such a challenge. Since the government's deficiency assessment is afforded a presumption of correctness, the burden of producing evidence to rebut the presumption in placed on the taxpayer. *Resyn Corporation v. United States,* 851 F.2d 660, 662–63 (3d Cir.1988). Debtor's failure to produce any evidence causes his motion to reconsider our denial of his objection to the IRS proofs of claim to fail.

 Underlying debtor's various procedural challenges is debtor's basic premise that he does not have to pay income taxes, because his income is not derived from a "revenue taxable activity." [9] *See,* Amendment to Motion to Declare Government's Exhibits Inadmissible as Evidence, 2. He does not require a governmental license to earn

---

**9.** In support of this argument debtor cites four Supreme Court cases: *Tyler v. United States,* 281 U.S. 497, 50 S.Ct. 356, 74 L.Ed. 991 (1930); *Stanton v. Baltic Mining Co.,* 240 U.S. 103, 36 S.Ct. 278, 60 L.Ed. 546 (1916); *Brushaber v. Union Pacific R.R. Co.,* 240 U.S. 1, 36 S.Ct. 236, 60 L.Ed. 493 (1916); *Flint v. Stone Tracy Co.,* 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389 (1911). *Tyler* held that a statute requiring inclusion of the value of property held by tenants in the entirety in the gross estate was an unconstitutional direct tax without apportionment. *Stanton* held that Congress cannot enact a direct tax that discriminates against corporations based upon the source of the income. *Brushaber* held that the Tariff Act of 1913 was constitutional under the 16th Amendment with respect to corporations, and *Flint* upheld the constitutionality of the Corporate Tax Act of 1909. None of these cases deals with whether an individual debtor's income is "revenue taxable activity."

income, and he maintains that any tax on his income is "indirect" and unconstitutional. Debtor is self-employed as a sign-painter, and he has earned and continues to earn income from that trade.

In rejecting similar arguments from another tax protester, Judge Brotman, in a recent reported decision, collected cases in which courts have routinely rejected arguments such as the one made by the debtor here with regard to being exempt from federal taxation. *United States v. Jones*, 877 F.Supp. 907 (D.N.J.1995). These courts have held that the federal government has the power to tax the income of all United States citizens. *See, e.g., United States v. Connor*, 898 F.2d 942, 943–44 (3d Cir.) *cert. denied* 497 U.S. 1029, 110 S.Ct. 3284, 111 L.Ed.2d 793 (1990) (Congress properly exercised its power to tax income, wages are income within the meaning of the Sixteenth Amendment, and arguments that wages are not taxable income have been unequivocally rejected); *cert. denied; United States v. Sloan*, 939 F.2d 499, 501 (7th Cir.1991) *cert. denied* 502 U.S. 1060, 112 S.Ct. 940, 117 L.Ed.2d 110 (1992) (all individuals must pay federal income tax on their wages, regardless of whether they have requested, obtained or exercised any privilege from the federal government).

 By way of final argument, debtor challenges the IRS assessment against him for a delinquency penalty under 26 U.S.C. § 6651[10] and a negligence penalty under § 6653(a).[11] As to the section 6651 penalty assessed against debtor, the statute authorizes the imposition of a penalty if a debtor fails to file any returns, "unless it is shown that such failure is due to reasonable cause and not due to willful neglect." The debtor contends that in order to assess the penalty, the IRS is required to show that debtor did not exercise reasonable care in failing to file a return.

 The "reasonable care" exception to the delinquency tax requires the taxpayer to demonstrate that he exercised " 'ordinary business care and prudence' but nevertheless was 'unable to file the return within the prescribed time.' " *United States v. Boyle*, 469 U.S. 241, 246, 105 S.Ct. 687, 690, 83 L.Ed.2d 622 (1985) (quoting 26 CFR § 301.6651(c)(1)). Willful neglect is defined as "a conscious, intentional failure or reckless indifference" to the requirement of filing a return. *Boyle*, 469 U.S. at 245, 105 S.Ct. at 690. Debtor failed to file his tax returns for the period from 1984 to 1992. It is apparent that the debtor made the conscious and intentional decision not to file returns, based on his mistaken belief that his income was not taxable. The burden to establish the "reasonable cause" exception is on the debtor, *Resyn v. United States*, 851 F.2d at 663, and the debtor has plainly failed to meet that burden.

 As to the section 6653(a) penalty assessed against the debtor, debtor contends that the IRS cannot assess a penalty against him under 26 U.S.C. § 6653(a) because he does not meet the statutory definition of a "person" for purposes of that section. The penalties assessed by the IRS with respect to section 6653 only apply to the tax years prior

---

**10.** Section 6651 provides in pertinent part:
In case of failure—
(1) to file any return required under authority of subchapter A of chapter 61 (other than part III thereof), . . . on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate;
26 U.S.C. § 6651.

**11.** Section 6653 was amended on December 19, 1989. See text page 22. It now reads:

Any person (as defined in section 6671(b)) who—
(1) willfully fails to pay any tax imposed by this title which is payable by stamp, coupons, tickets, books, or other devices or methods prescribed by this title or by regulations under the authority of this title, or
(2) willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable for a penalty of 50 percent of the total amount of the underpayment of the tax.

**140**

to 1989. Section 6653 was amended on December 19, 1989, P.L. 101–239, Title VII, § 7721(c)(1), 103 Stat. 2399. The predecessor statute makes no reference to a "person," providing instead as follows:

> (1) If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to negligence (or disregard of rules and regulations), there shall be added to the tax an amount equal to 5 percent of the underpayment.

In any event, the term "person" plainly includes the debtor as an individual. Debtor's citation to 26 U.S.C. § 6671(b),[12] which includes within the term "person" officers and employees of a corporation, and members or employees of a partnership, is misplaced.

### CONCLUSION

Based on the foregoing, we conclude that debtor's motions for reconsideration of our denial of debtor's objection to the IRS proofs of claim and dismissal of debtor's case are denied, as is debtor's motion to "declare government's exhibits inadmissible in evidence."

 In his schedules, debtor lists excess monthly income as $306 (net monthly income of $4,992 minus monthly expenses of $4,686). To accommodate Chapter 13 plan requirements, debtor would be required, at a minimum, to satisfy in full the IRS secured claim of $55,302.30,[13] with interest, 11 U.S.C. § 1325(a)(5), and the priority claim of $12,-526.70, 11 U.S.C. § 1322(a)(2). The monthly payment required over a sixty month period to satisfy the secured and priority claims, with interest and trustee commissions, would exceed $1,200 per month. Given debtor's excess monthly income of $306 per month, there is no basis to believe that a chapter 13 plan is feasible under these circumstances.

12. Section 6671(b) reads:
> The term "person", as used in this subchapter, includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs.

13. We recognize that the extent of the IRS secured claim is limited by the value of debtor's interest in property. 11 U.S.C. § 506(a). If we understand that debtor holds title to his home as

Debtor's case must therefore remain dismissed.

The IRS shall submit an order in conformance herewith.

a tenant by the entirety, and is therefore chargeable with one-half equity in the home, *In re Youmans*, 117 B.R. 113, 117–18 (Bankr.N.J. 1990), we calculate the extent of debtor's equity in the home to be approximately $35,000 (one-half of the value of $100,000 minus the mortgage of $30,000). Debtor's personal property is noted to have a value at the time of the filing of the petition of $11,420. Therefore, the IRS secured claim would be approximately $46,420.