**In re Michael FLEMING, Debtor.**

No. 97–6342–8G3.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

June 30, 2000.

Maggie O'Shaughnessy, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, D.C., for Claimant.

Terry E. Smith, Bradenton, FL, Chapter 13 Trustee.

## ORDER ON OBJECTION TO CLAIM

PAUL M. GLENN, Bankruptcy Judge.

**THIS CASE** came before the Court for a final evidentiary hearing to consider the Objection to Claim, by which Michael Fleming (the Debtor) objects to the claim of the Department of the Treasury—Internal Revenue Service (the IRS).

The IRS filed a proof of claim (Claim #6) in the total amount of $64,223.58. The Claim is based on income taxes, together with related interest and penalties, for the 1991, 1992, 1993, 1995, and 1996 tax years.

In his Objection to the Claim, the Debtor identified the "basis for objection and

recommended disposition" as "W–2 income not recognized under § 61, no supporting records; recommend claim be disallowed."

The IRS filed an amended proof of claim (Claim # 7) in the total amount of $55,499.97. The amended proof of claim does not include any liability for the 1991 tax year, and the amount of the tax and interest claimed for 1992 is less than the amount set forth on Claim # 6.

The Debtor objected to the amended claim of the IRS on the same grounds as he objected to the previous claim.

## I. Burdens of Proof.

 Rule 3001(f) of the Federal Rules of Bankruptcy Procedure provides that "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." If an objection is filed, the objecting party has the burden of going forward and introducing sufficient evidence to rebut the presumption of validity created under Rule 3001(f). "Such evidence must be sufficient to evidence a true dispute and must have probative force equal to the contents of the claim. Upon introduction of sufficient evidence by the objecting party, the burden of proof must then be met by the claimant by a preponderance of the evidence." 8 *Collier on Bankruptcy* 15th ed. § 3001.05 (1996). "The burden of proof is on the objecting party to produce evidence 'equivalent in probative value to that of the creditor to rebut the prima facie effect of the proof of claim. However, the burden of ultimate persuasion rests with the claimant.' " *In re Homelands of DeLeon Springs, Inc.,* 190 B.R. 666, 668 (Bankr.M.D.Fla.1995) citing *In re VTN, Inc.,* 69 B.R. 1005 (Bankr.S.D.Fla.1987).

## II. The Claim.

A. **1991.** It appears that the amounts set forth in Claim # 6 relating to the 1991 tax year have been paid, and the income taxes claimed for that year are no longer in issue. Claim # 7 does not include any liability for the 1991 tax year.

B. **1992.** The IRS contends that the Debtor received income in 1992 in the total amount of $70,848.11. The total income consists primarily of $49,842.11 in wages (Montgomery County Public Schools), $1,773.00 in non-employee compensation (Basketball Officials Association), $1,992.00 in the early distribution of an annuity (The Travelers), and $18,221.00 in the early distribution of a separate annuity (Variable Annuity Life Company). (IRS Exhibit 13).

The Debtor has acknowledged that he worked for Montgomery County Schools for approximately 22 years. (IRS Exhibit 17, Deposition Transcript of Michael Fleming, p. 8, hereafter referred to as "Deposition Transcript"). Further, the Debtor has stated (1) that he was a certified basketball official, and that he "probably" received money in 1992 for acting as a basketball referee (Deposition Transcript, p. 51); (2) that he had "tax shelter annuities" with Variable Annuity Life Insurance Company and Travelers, and that he had the "habit" of taking withdrawals from the annuities (Deposition Transcript, p. 9–10, 42, 55); and (3) that he held an account at the First National Bank of Maryland that was "more than likely" an interest bearing account (Deposition Transcript, pp. 9, 30, 56).

On April 13, 1998, the Debtor signed a U.S. Individual Income Tax Return for 1992. (IRS Exhibit 4). On line 7 of the Return, regarding "wages, salary, tips, etc.," the Debtor entered the sum of $49,842.11. A copy of a Form W–2 is attached to the Return. The Form W–2 reflects that the Debtor's employer was Montgomery County Public Schools, and that the Debtor's wages, tips, and other compensation amounted to $49,842.11. No other income was reported on the Return.

Jane Knox, a tax auditor for the IRS, testified that the Debtor reported wages for 1992 in the amount of $49,842, and that his corrected taxable income for that year was $65,824, after accounting for his unre-

ported income. (Transcript of Final Evidentiary Hearing, pp. 41–42).

**C. 1993.** The IRS contends that the Debtor received income in 1993 in the total amount of $63,389.78. The total income consists primarily of $56,503.78 in wages (Montgomery County Public Schools), $1,583.00 in non-employee compensation (Basketball Officials Association), $580.00 in the early distribution of an annuity (The Travelers), and $4,687.00 in the early distribution of a separate annuity (Variable Annuity Life Company). (IRS Exhibit 14).

As indicated above, the Debtor has acknowledged that he worked for the Montgomery County Schools for approximately 22 years. (Deposition Transcript, p. 8). Additionally, the Debtor has stated (1) that he received money in 1993 for his activities when he refereed for the Basketball Officials Association (Deposition Transcript, p. 51); and (2) that he had the habit of taking withdrawals from his annuities during the 1993 time period (Deposition Transcript, pp. 9–10, 42, 55).

On April 13, 1998, the Debtor signed a U.S. Individual Income Tax Return for 1993. (IRS Exhibit 5). On line 7 of the Return, regarding "wages, salary, tips, etc.," the Debtor entered the sum of $56,503.78. A copy of a Form W–2 is attached to the Return. The Form W–2 reflects that the Debtor's employer was the Montgomery County Public Schools, and that the Debtor's wages, tips, and other compensation amounted to $56,503.78. No other income was reported on the Return.

Jane Knox testified that the Debtor reported wages for 1993 in the amount of $56,503.78, and that the Debtor received unreported income in that year consisting of non-employee compensation in the amount of $1,583, and pension income from Travelers in the amount of $580 and from Variable Annuity Life in the amount of $4,687. (Hearing Transcript, pp. 44–45).

**D. 1995.** The IRS contends that the Debtor received income in 1995 in the total amount of $76,708.00. The total income consists primarily of $39,410.00 in wages (Prince Georges County Maryland), $30,865.00 in wages (Pinellas County School Board), $711.00 in non-employee compensation (Basketball Officials Association), and $5,436.00 in the early distribution of an annuity (Variable Annuity Life Company). (IRS Exhibit 15).

The Debtor has acknowledged that he previously was the Director of Transportation for the Prince Georges County Public Schools, and that he currently is the Director of Transportation for the Pinellas County School District. (Deposition Transcript, pp. 3, 7). Further, the Debtor has stated (1) that he received money in 1995 when he refereed games for the Basketball Officials Association (Deposition Transcript, p. 50); and (2) that he took withdrawals from his annuities in the 1995 time period (Deposition Transcript, pp. 9–10, 42, 53, 55).

On April 13, 1998, the Debtor signed a U.S. Individual Income Tax Return for 1995. (IRS Exhibit 6). On line 7 of the Return, regarding "wages, salary, tips, etc.," the Debtor entered the sum of $70,275.00. No other income was reported on the Return.

Jane Knox testified that the Debtor reported wages for 1995 in the amount of $70,275, and that the Debtor received unreported income for that year consisting of non-employee compensation in the amount of $711, and a taxable distribution from Variable Annuity Life Insurance Company in the amount of $5,436. (Hearing Transcript, pp. 47–48).

**E. 1996.** The IRS contends that the Debtor received income in 1996 in the total amount of $66,632.00. The total income consists primarily of $66,487 in wages (Pinellas County School Board), and $106.00 in the early distribution of an annuity (The Travelers). (IRS Exhibit 16).

The Debtor has acknowledged that he works for the Pinellas County School District. (Deposition Transcript, 3). Fur-

ther, the Debtor also has acknowledged that he received funds in the amount of $106 from Travelers Insurance Company in 1996. (Deposition Transcript, pp. 52–53).

On April 13, 1998, the Debtor signed a U.S. Individual Income Tax Return for 1996. (IRS Exhibit 7). On line 7 of the Return, regarding "wages, salary, tips, etc.," the Debtor entered the sum of $66,487.64. A copy of a Form W–2 is attached to the Return. The Form W–2 reflects that the Debtor's employer was the Pinellas County School Board, and that the Debtor's wages, tips, and other compensation amounted to $66,487.64. No other income was reported on the Return.

Jane Knox testified that the Debtor reported wages for 1996 in the amount of $66,487.64, and that the Debtor received unreported income for that year consisting of a taxable distribution from Travelers in the amount of $106. (Hearing Transcript, p. 49).

## III. The Objection.

The Debtor does not appear to dispute the fact of his employment, or to dispute the fact that he has received compensation for services that he has provided. Instead, it appears that the Debtor essentially asserts that he is not subject to a tax and therefore is not a taxpayer, and that the IRS has no authority to assess and collect taxes on the compensation that he receives from his employment or other services.

### A. "Subject to" a tax.

The Debtor contends that the IRS has not established that he is a taxpayer. According to the Debtor, the term "taxpayer" is defined in § 7701(14) of the Internal Revenue Code as "any person subject to any internal revenue tax." The Debtor focuses on the phrase "subject to" in the definition, and asserts that the IRS has not shown that his income is "subject to" any "revenue taxable activity."

The Debtor contends that only two types of taxes have a basis in the United States Constitution: (1) direct taxes, or taxes on people or property, and (2) indirect taxes, or taxes on a taxable activity or taxable event. The Debtor asserts, however, that the IRS has not identified a source or "subject" of income taxes which is contained within one of these categories. Specifically, the Debtor stated:

And the question I would ask of this Court is what is actually being taxed. Is it people, is it property or is it some revenue taxable activity. There cannot be any intelligent conversation about a tax until the actual subject of the tax is known.

. . .

So under those two great clauses of the Constitution, you have indirect taxes and [direct] taxes. Everything else is moot if it doesn't meet those. So we ask: What is the subject of the so-called income tax? Is it people, is it property or is it activities, and in what section of the Internal Revenue Code does it impose a tax on that particular subject. [The attorney for the IRS] talked about the items but she didn't talk about the sources.

(Transcript of Final Evidentiary Hearing, pp. 120, 121–22). Because the IRS has not identified the source of any tax on income or shown that he is "subject to" an income tax, the Debtor concludes that he is not a taxpayer with taxable income.

Finally, the Debtor's concluding argument included the following:

What is the strongest argument that can be made against a claim that the mere receipt of earnings and income is a Revenue-taxable activity?

My strongest argument can be made against a claim that the mere receipt of income is a Revenue activity is the fact that if there were so, the entire income portion of the Revenue Act of 1894 would have been valid as an indirect tax. Instead of it being valid, the *Pollock*

court declared it the entire income tax portion of the Act invalid and that case has never been overturned.

(Transcript, p. 141).

First, the Court notes that *Pollock v. Farmers' Loan & Trust Co.*, 157 U.S. 429, 15 S.Ct. 673, 39 L.Ed. 759 (1895), referenced by the Debtor in the preceding excerpt, was expressly overruled by the United States Supreme Court in *South Carolina v. Baker*, 485 U.S. 505, 524, 108 S.Ct. 1355, 99 L.Ed.2d 592 (1988)("We thus confirm that subsequent case law has overruled the holding in Pollock that state bond interest is immune from a nondiscriminatory federal tax."). Other cases suggest that the decision in *Pollock* had been nullified even earlier with the passage of the Sixteenth Amendment. *Scott v. Comptroller of the Treasury*, 105 Md. App. 215, 223–24, 659 A.2d 341 (1995)("The Pollock decision itself, however, was later negated by the enactment of the Sixteenth Amendment, which was ratified in 1913. The Sixteenth Amendment expressly authorized an income tax.").

The provisions of the United States Constitution cited by the Debtor regarding direct and "indirect" taxes appear in Article I of the Constitution. See U.S. Const. Art. I, §§ 2, 8, and 9. Article I, § 2, for example, provides that "[r]epresentatives and direct taxes shall be apportioned among the several states which may be included within this union, according to their respective numbers." Additionally, Article I, § 8 of the United States Constitution provides that "[t]he Congress shall have power to lay and collect taxes, duties, imposts and excises, to pay the debts and provide for the common defense and general welfare of the United States; but all duties, imposts and excises shall be uniform throughout the United States."

The Sixteenth Amendment to the United States Constitution, which was not extensively discussed by the Debtor, provides:

The Congress shall have power to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several states, and without regard to any census or enumeration.

U.S. Const. Amend. XVI.

It is generally agreed that Article I of the Constitution authorizes Congress to tax the income of individuals, and that the Sixteenth Amendment eliminated the requirement that such taxes be apportioned among the states. After setting forth the text of the Sixteenth Amendment, the United States Supreme Court in *Brushaber v. Union Pacific Railroad Company*, 240 U.S. 1, 17–18, 36 S.Ct. 236, 60 L.Ed. 493 (1916) stated:

It is clear on the face of this text that it does not purport to confer power to levy income taxes in a generic sense,—an authority already possessed and never questioned,—or to limit and distinguish between one kind of income taxes and another, but that the whole purpose of the Amendment was to relieve all income taxes when imposed from apportionment from a consideration of the source whence the income was derived.

Subsequent cases reach the same conclusion. See *United States v. Sitka*, 845 F.2d 43, 46 (2d Cir.1988)("Therefore, the Sixteenth Amendment, along with the pre-existing taxing power created by Article I, section 8 of the Constitution, provides Congress with the necessary authority to impose a direct, non-apportioned income tax."); *Secora v. United States*, 1997 WL 460162, at *6 (D.Neb.)("The language employed in the Sixteenth Amendment to which the plaintiffs point eliminates restrictions on Congress' taxing power stemming from Article I, Section 2, Clause 3 and Article I, Section 9, Clause 4, concerning the need for apportionment among the states. Congress may impose taxes on individuals in the states 'without apportionment among the several States, and without regard to any census or enumeration' and 'on incomes, from whatever source derived.' "); *United States v. Rhodes*, 921 F.Supp. 261, 265

(M.D.Penn.1996)("Succinctly stated, Brushaber holds that Congress had, even before the Sixteenth Amendment was passed, the authority to tax income. If the income tax was a direct tax in the constitutional sense, it was subject to the requirement of apportionment. The Sixteenth Amendment eliminated the requirement of apportionment as it relates to 'taxes on incomes, from whatever source derived.'"); and *Mahfood v. Post,* 1994 WL 675086, at *2–3 (E.D.N.Y.)("Stanton and Brushaber both recognize that Congress does not need to rely on the Sixteenth Amendment for the authority to tax income because Article I, § 8 grants Congress the power to levy income taxes.... Article I serves as the building block for Congress' exercise of the taxing power, whereas 'the Sixteenth Amendment merely eliminates the requirement that the direct income tax be apportioned among the states.'").

Additionally, the United States District Court in *Angstadt v. Internal Revenue Service,* 1999 WL 820866, at *2 (E.D.Pa.) discussed the significance of the Sixteenth Amendment in connection with arguments similar to the Debtor's:

> The Supreme Court has said that Congress used its taxing power to the fullest extent permitted by the Constitution. See *Commissioner v. Glenshaw Glass Co.,* 348 U.S. 426, 429, 75 S.Ct. 473, 99 L.Ed. 483 (1955). Despite that clear statement, appellant suggests that before an "item" of income may be considered, the particular "source" of the "item" must be identified.... He is wrong. *By the terms of both the Sixteenth Amendment and § 61(a),* "source" is not to be a limitation on taxable income. Rather, income is to be taxed regardless of its source. The Supreme Court "has given a liberal construction to this broad phraseology in recognition of the intention of Congress to tax all gains except those specifically exempted." See *Commissioner v. Glenshaw Glass Co.,* 348 U.S. at 429–30.

(Emphasis supplied). In § 61(a) of the Internal Revenue Code, as cited in *Angstadt,* "gross income" is defined to include compensation for services and commissions. See *In re Busch,* 213 B.R. 390, 393 (Bankr.M.D.Fla.1997).

According to these authorities, therefore, it appears that it is immaterial as to whether the "source" or the "subject" of an income tax is people, property, or a taxable activity, as suggested by the Debtor. Congress is authorized to tax the income of individuals by virtue of Article I of the United States Constitution and the Sixteenth Amendment. The United States Supreme Court has defined "income" as "'the gain derived from capital, from labor, or from both combined,' provided it be understood to include profit gained through a sale or conversion of capital assets." *Eisner v. Macomber,* 252 U.S. 189, 207, 40 S.Ct. 189, 64 L.Ed. 521 (1920). The IRS is not required to show that the Debtor's income is derived from a "revenue taxable activity." See *In re Rosemiller,* 188 B.R. 129, 138–39 (Bankr.D.N.J. 1995).

### B. "Delegated authority."

The Debtor filed a post-trial brief in which he asserts (1) that "the authority of all Treasury officers and employees below that of the Secretary depends upon either Treasury Department Orders ("TDOs") or duly promulgated agency regulations" (Brief, p. 3); (2) that "a government employee must have some specific delegated authority, based upon statutes, regulations or delegation orders, in order to be authorized to act" (Brief, pp. 8–9); and (3) that federal agencies are required "to publish in the Federal Register descriptions of the agency's organizational structure as well as those substantive rules of general applicability duly promulgated by the agency" (Brief, p. 16). The Debtor contends that authority has not been properly delegated to employees of the IRS in accordance with these principles.

494

In *Tweedy v. United States*, 1992 WL 438014, at *8 (D.Idaho), the District Court rejected an argument that an employee has no power or authority to administer the Internal Revenue laws.

This is so because the United States Tax Court has stated, "delegation orders do no (sic) affect the rights and obligations of citizens .. [t]hey are not substantive or legislative-type rules of law, but rather rules of internal agency/management procedure." *Stamos v. Commissioner*, 95 T.C. 624, 631 (1990).

The Ninth Circuit has addressed a similar challenge and stated that certain Treasure Delegation Orders had "no legal impact on, or significance for, the general public. Instead, they simply effected a shifting of responsibilities wholly internal to the Treasure Department." *United States v. Saunders*, 951 F.2d 1065, 1068 (9th Cir.1991).

*Tweedy v. United States*, 1992 WL 438014 (D.Idaho), *aff'd* 26 F.3d 132 (9th Cir.1994). The reasoning of *Tweedy* subsequently was quoted with approval in *In re Fuller*, 204 B.R. 894, 899 (Bankr.W.D.Penn.1997).

In *In re Schibilsky*, 185 B.R. 81 (Bankr. N.D.Ga.1995), the Court encountered arguments similar to those of the Debtor in the context of determining whether an agent of the IRS has the properly delegated authority to file a proof of claim in a bankruptcy case. The Court first made the following points: (1) the Secretary of the Treasury is statutorily authorized to administer and enforce the tax laws of the United States pursuant to 26 U.S.C. § 7801; (2) the Secretary of the Treasury may delegate his duties to the Commissioner of Internal Revenue pursuant to 26 U.S.C. § 7802(a); and (3) the Secretary of the Treasury delegated the responsibility for the administration and enforcement of the internal revenue laws to the Commissioner of Internal Revenue by virtue of Department of Treasury Order No. 150–10. See also *In re Harrison*, 177 B.R. 564, 567 (Bankr.S.D.Ohio 1994). The Court in *Schibilsky* then stated:

Section 552(a)(1)(D) [of title 5 of the United States Code] requires that "substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency," be published in the Federal Register. 5 U.S.C. § 552(a)(1)(D) (1994). Contrary to plaintiff's contention, at least four circuit courts have held that internal delegations of authority like TDO No. 150–10 are not "substantive rules of general applicability" requiring publication in the Federal Register. (citations omitted). Two of these cases specifically found that the Federal Register Act (44 U.S.C. §§ 1501 to 1511) did not require publication of TDO 150–10.

*In re Schibilsky*, 185 B.R. at 83. The Court concluded that the IRS possessed the properly delegated authority to file proofs of claim and participate in bankruptcy proceedings on behalf of the United States.

It also has been held that "[r]evenue officers of the Internal Revenue Service are authorized to serve summonses under the authority of the United States. 26 U.S.C. § 7608(a)." *United States v. Hartman*, 915 F.Supp. 1227, 1230 (M.D.Fla. 1996).

The Court finds that the Debtor did not establish that the authority to administer internal revenue laws was not properly delegated to officers or employees of the Internal Revenue Service.

### Conclusion

The IRS filed a proof of claim (Claim # 6) in the total amount of $64,223.58, and the Debtor filed a written objection to the claim. The IRS filed an amended proof of claim (Claim # 7) in the total amount of $55,499.97, and the Debtor objected on the same grounds.

The issues in this case were (1) the amount of federal income tax due and owing pursuant to returns filed by the Debtor for 1992, 1993, 1995, and 1996, (2) the

amount of the Debtor's unreported income and the tax due on that income for tax years 1992, 1993, 1995, and 1996, (3) the amount of the Debtor's unpaid 1991 tax liability, and (4) additional taxes, penalties, and interest that may be due on the components of the taxes identified. (Trial Scheduling Order, Doc. 57).

The IRS presented documentary evidence and the testimony of Jane Knox regarding the income received by the Debtor in 1992, 1993, 1995, and 1996. The Debtor failed to establish that income taxes were not due for those years. Specifically, the Debtor did not show that he is not a "taxpayer" or that his income is not "subject to" an internal revenue tax. Congress is authorized to tax the income of individuals pursuant to Article I of the United States Constitution and the Sixteenth Amendment, and it is unnecessary to classify the "source" or "subject" of the income tax as people, property, or a taxable activity. Additionally, the Debtor did not show that the authority to administer and enforce internal revenue laws has not been properly delegated to officers and employees of the IRS.

The Court determines that Debtor's objection should be overruled, and the allowed amount of the claim of the IRS should be $55,499.97.

Accordingly:

**IT IS ORDERED that:**

1. The Debtor's Objection to Claim of the Department of the Treasury—Internal Revenue Service is overruled.

2. Claim Number 7 of the Department of the Treasury—Internal Revenue Service, which amends Claim Number 6, is allowed as filed in the amount of $55,499.97.